**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** ) | |
| **378 N. Main Avenue** ) | |
| **Tucson, AZ 85701** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:26-cv-940-RC** |
| ) | |
| **DOUGLAS BURGUM,** *in his official capacity* ) | |
| *as Secretary of the Interior*, ) | |
| **1849 C Street, NW** ) | |
| **Washington, DC 20240** ) | |
| **Defendant.** ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................3

      A.      The Endangered Species Act ..................................................................3

              1.      ESA Section 7 ..........................................................................3

              2.      The Committee..........................................................................4

              3.      Exemptions ..............................................................................5

      B.      ESA Section 7 consultation on oil and gas development in the Gulf of America........................................................................................................6

      C.      The Secretary of the Interior announces a Committee meeting.............7

      D.      Plaintiff files this baseless lawsuit .......................................................8

STANDARD OF REVIEW .............................................................................................8

ARGUMENT..................................................................................................................9

      A.      Plaintiff is trying to challenge non-final agency action in the wrong court, and it lacks standing to block a meeting. ................................................9

              1.      Convening the Committee is not final agency action. .............10

              2.      Plaintiff's claims must be heard in the court of appeals. ..........12

               3.      Plaintiff lacks standing to challenge the Secretary's notice convening the Committee. ........................................................16

      B.      Plaintiff fails to meet its burden for obtaining extraordinary injunctive relief. ....................................................................................................18

              1.      Plaintiff has not shown likelihood of success on the merits. ....19

               2.      Plaintiff has not shown irreparable harm. ...............................27

               3.      The equities and public interest weigh against granting relief. .................30

CONCLUSION..............................................................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Air Brake Sys., Inc. v. Mineta,*
   357 F.3d 632 (6th Cir. 2004) ............................................................................... 11

*Al Janko v. Gates,*
   831 F. Supp. 2d 272 (D.D.C. 2011) ...................................................................... 9

*Am. Fed. of Gov't Emps. TSA Local 1 v. Hawley,*
   481 F. Supp. 2d 72 (D.D.C. 2006) ...................................................................... 20

*Arch Coal, Inc. v. Acosta,*
   888 F.3d 493 (D.C. Cir. 2018) ............................................................................ 13

*Ass'n of Admin. L. Judges v. U.S. Office of Personnel Mgmt.,*
   640 F. Supp. 2d 66, 73 (D.D.C. 2009)) ............................................................. 11

*Beatty v. Trump,*
   No. 25-cv-4480, 2026 WL 712814 (D.D.C. Mar. 14, 2026) ............................... 28

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................................ 10

*Bluewater Network v. E.P.A.,*
   370 F.3d 1 (D.C. Cir. 2004) ................................................................................ 26

*Bombardier, Inc. v. U.S. Dep't of Lab.,*
   145 F. Supp. 3d 21 (D.D.C. 2015) ...................................................................... 13

*Boumediene v. Bush,*
   553 U.S. 723 (2008) ............................................................................................ 22

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ............................................................................................ 13

*Cal. Cmtys. Against Toxics v. EPA,*
   934 F.3d 627 (D.C. Cir. 2019) ............................................................................ 11

*\*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ............................................................. 8, 9, 27, 29

*Chiron Corp. v. U.S. Nat'l Transp. Safety Bd.,*
   27 F. Supp. 2d 257 (D.D.C. 1998) ...................................................................... 15

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993).................................................................................................. 20

*Citizens for Const. Integrity v. Census Bureau*,
  115 F.4th 618 (D.C. Cir. 2024) ............................................................................. 16

*Climate United Fund v. Citibank*,
  775 F. Supp. 3d 335 (D.D.C 2025) ....................................................................... 25

*Common Cause v. Nuclear Regul. Comm'n*,
  674 F.2d 921 (D.C. Cir. 1982) .............................................................................. 22

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
  709 F.2d 1521 (D.C. Cir. 1983) ............................................................................ 13

*Ctr. for Democracy & Tech. v. Trump*,
  507 F. Supp. 3d 213 (D.D.C. 2020) ...................................................................... 17

*Deal v. United States*,
  508 U.S. 129 (1993)................................................................................................ 21

*Defs. of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013) ............................................................................ 18

*Doe v. S.D. Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ............................................................................... 29

*FDA v. Wages & White Lion Invs., L.L.C.*,
  604 U.S. 542 (2025)................................................................................................ 12

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985)................................................................................................ 15

*Food Chem. News v. Dep't of Health & Human Servs.*,
  980 F.2d 1468 (D.C. Cir. 1992) ............................................................................ 28

*Fulani v. Brady*,
  935 F.2d 1324 (D.C. Cir. 1991) ............................................................................ 17

*Gerber v. Norton*,
  294 F.3d 173 (D.C. Cir. 2002) ........................................................................ 25, 26

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,
  639 F.3d 1078 (D.C. Cir. 2011) ............................................................................ 19

*Green v. Dep't of Com.*,
618 F.2d 836 (D.C. Cir. 1980) ........................................................................................ 9

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) .......................................................................................................... 21

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ...................................................................................................... 16

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015) ...................................................................................... 12

*\*Lawyers' Comm. for C.R. Under L. v. Presidential Advisory Comm'n on Election Integrity*,
265 F. Supp. 3d 54 (D.D.C. 2017) ..................................................................... 22, 23, 29

*Liberty Maritime Corp. v. United States*,
928 F.2d 413 (D.C. Cir. 1991) ...................................................................................... 20

*Louisiana v. Nat'l Marine Fisheries Serv.*,
No. 2:25-cv-691, 2026 WL 184236 (W.D. La. Jan. 23, 2026) ...................................... 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................. 16, 17

*Maryland v. King*,
567 U.S. 1301 (2012) .................................................................................................... 30

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ........................................................................................................ 9

*McCaleb v. Long*,
No. 3:22-CV-00439, 2023 WL 2602507 (M.D. Tenn. Mar. 22, 2023) .......................... 23

*McKart v. United States*,
395 U.S. 185 (1969) ...................................................................................................... 30

*\*Mdewakanton Sioux Indians of Minn. v. Zinke*,
255 F. Supp. 3d 48 (D.D.C. 2017) ....................................................................... 8, 9, 18, 20

*Mexichem Specialty Resins, Inc. v. E.P.A.*,
787 F.3d 544 (D.C. Cir. 2015) ...................................................................................... 14

*Monsanto v. Geertson Seed Farms*,
561 U.S. 139 (2010) ...................................................................................................... 29

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*,
915 F.3d 197 (4th Cir. 2019) ...................................................................................... 29

*Nat'l Ass'n of Home Builders v. Norton*,
415 F.3d 8 (D.C. Cir. 2005) ........................................................................................ 10

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018) .............................................................................................. 12-13

*Nat'l Treasury Emps. Union v. Trump*,
770 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................... 9, 19

*Nat'l Treasury Emps. Union v. Trump*,
No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ....................................... 30

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
366 F.3d 930 (D.C. Cir. 2004) .................................................................................... 13

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................................................... 30

*Overdevest Nurseries, L.P. v. Walsh*,
2 F.4th 977 (D.C. Cir. 2021) ....................................................................................... 26

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*,
901 F. Supp. 2d 54 (D.D.C. 2012) ................................................................................ 8

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) ....................................................................................................... 27

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
962 F.2d 27 (D.C. Cir. 1992) ....................................................................................... 17

*Portland Audubon Society v. Endangered Species Committee*,
984 F.2d 1534 (9th Cir. 1993) ..................................................................................... 24

*Russello v. United States*,
464 U.S. 16 (1983) ....................................................................................................... 21

*Sampson v. Murray*,
415 U.S. 61 (1974) ....................................................................................................... 29

*Seminole Pipeline Co. v. Vogt*,
794 F. Supp. 438 (D.D.C. 1992) .................................................................................. 15

*Sierra Club v. EPA*,
955 F.3d 56 (D.C. Cir. 2020) ................................................................................. 10

*Sierra Club v. Nat'l Marine Fisheries Serv.*,
797 F. Supp. 3d 440 (D. Md. 2024) ........................................................................ 6-7

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) ............................................................................... 14

*Soundboard Ass'n v. Fed. Trade Comm'n*,
888 F.3d 1261 (D.C. Cir. 2018) ............................................................................. 10

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) ................................................................................................. 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................................................................... 9

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*,
402 U.S. 1 (1971) ................................................................................................... 18

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........................................................................... 14, 15

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........................................................................................ 18, 30

*Ukiah Adventist Hospital v. F.T.C.*,
981 F.2d 543 (D.C. Cir. 1992) .......................................................................... 14-15

*United Presbyterian Church in the U.S.A. v. Reagan*,
738 F.2d 1375 (D.C. Cir. 1984) ............................................................................ 17

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) ............................................................................................... 27

*Wagner v. Fed. Election Comm'n*,
717 F.3d 1007 (D.C. Cir. 2013) ............................................................................ 13

*We the People, Inc., of the U.S. v. Nuclear Regul. Comm'n*,
746 F. Supp. 213 (D.D.C. 1990) ........................................................................... 21

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) ............................................................................................... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................... 8

*\*Wis. Cent. Ltd v. United States*,
  585 U.S. 274 (2018) ...................................................................................... 23, 24

*\*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ....................................................................... 27, 29

*Ysleta Del Sur Pueblo v. Texas*,
  596 U.S. 685 (2022) ........................................................................................... 21

**Statutes**

5 U.S.C. § 552b(b) ................................................................................................ 22

5 U.S.C. § 704 ...................................................................................................... 10

5 U.S.C. § 1009(a) ................................................................................................ 23

16 U.S.C. § 1532(6) ................................................................................................ 3

16 U.S.C. § 1532(19) .............................................................................................. 4

16 U.S.C. § 1532(20) .............................................................................................. 3

16 U.S.C. § 1533 .................................................................................................... 3

16 U.S.C. § 1533(d) ............................................................................................ 3, 4

16 U.S.C. § 1536 ............................................................................................. 10, 22

16 U.S.C. § 1536(a)(2) ........................................................................................ 3, 5

16 U.S.C. § 1536(a)(3) ............................................................................................ 3

16 U.S.C. § 1536(b)(3)(A) ....................................................................................... 3

16 U.S.C. § 1536(b)(4) ............................................................................................ 4

16 U.S.C. § 1536(e) ................................................................................................. 4

16 U.S.C. § 1536(e)(3) ............................................................................................ 4

16 U.S.C. § 1536(e)(5)(A) ....................................................................................... 5

16 U.S.C. § 1536(e)(5)(C) .................................................................................. 5, 19

*16 U.S.C. § 1536(e)(5)(D) ................................................................ 2, 5, 20, 21, 23, 26

*16 U.S.C. § 1536(e)(7)(A) ................................................................................. 5, 19, 28

16 U.S.C. § 1536(g) ................................................................................................... 20

16 U.S.C. § 1536(g)(1) ................................................................................................. 5

16 U.S.C. § 1536(g)(2)(A) ........................................................................................... 5

16 U.S.C. § 1536(g)(2)(B) ........................................................................................... 5

16 U.S.C. § 1536(g)(4) ............................................................................................... 24

16 U.S.C. § 1536(g)(6) ............................................................................................... 24

16 U.S.C. § 1536(g)(8) ............................................................................................... 27

16 U.S.C. § 1536(h) ............................................................................................... 4, 10

16 U.S.C. § 1536(h)(1) ...................................................................................... 5, 6, 21

16 U.S.C. § 1536(j) ................................................................................... 2, 5, 12, 30

16 U.S.C. § 1536(l)(1) ................................................................................................. 5

*16 U.S.C. § 1536(n) ....................................................................... 1, 6, 10, 12, 13, 14

16 U.S.C. § 1536(o)(1) ................................................................................................ 5

16 U.S.C. § 1536(o)(2) ................................................................................................ 4

16 U.S.C. § 1538 ..................................................................................................... 3, 4

16 U.S.C. § 1539 ........................................................................................................ 4

16 U.S.C. § 1540 ........................................................................................................ 4

28 U.S.C. § 1361 ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 12(h)(3) ............................................................................................... 9

**Regulations**

50 C.F.R. § 402.02 ................................................................................................................ 3, 4

50 C.F.R. § 402.13 ................................................................................................................... 3

50 C.F.R. § 402.14 ................................................................................................................... 3

50 C.F.R. § 402.14(a) ............................................................................................................... 3

50 C.F.R. § 402.14(h) .............................................................................................................. 3

50 C.F.R. § 402.14(h)(1)(iv)(A) ............................................................................................... 4

50 C.F.R. § 402.14(h)(2) ........................................................................................................... 4

50 C.F.R. § 402.14(i) ................................................................................................................ 4

50 C.F.R. § 451.02(b) ............................................................................................................... 5

50 C.F.R. § 453.03(b) ............................................................................................................... 5

50 C.F.R. § 453.03(d) ............................................................................................................... 5

50 C.F.R. § 453.05(e) ................................................................................................................ 5

**Federal Register**

*91 Fed. Reg. 12672 (Mar. 16, 2026) .......................................................................... 1, 7, 11, 20

x

**INTRODUCTION**

Plaintiff's emergency motion is extraordinary: it asks this Court to prevent an Executive Branch committee from simply holding a meeting. On March 16, the Chairman of the Endangered Species Committee published notice that the Committee plans to meet on March 31 to consider an exemption from the Endangered Species Act ("ESA") regarding oil and gas activities in the Gulf of America. 91 Fed. Reg. 12672 (Mar. 16, 2026). The meeting will be open to the public via live video. Rather than watch the livestream, Plaintiff rushed to court, speculating about the Committee's future action, speculating about future injury to animals, and asking this Court to step in before any Committee action and prevent the Committee from ever meeting.

The request to enjoin the meeting is baseless. Holding a meeting is not final agency action, the statute vests exclusive jurisdiction over Committee decisions in the courts of appeals, and Plaintiff's speculative future injury fails to support Article III standing. Plaintiff does no better on the merits when it tries to read atextual disclosure and in-person-attendance requirements into the ESA.

*Final agency action.* By challenging a notice announcing a meeting, Plaintiff is not challenging final agency action. A decision to have a meeting is a preliminary step on the way to final agency action. It's not the consummation of the Committee's decision-making process and has no legal consequences.

*Exclusive jurisdiction.* Plaintiff is most concerned that the Committee will grant an exemption that, in turn, will harm protected species. But if that happens, Plaintiff may seek judicial review in the relevant court of appeals, where Congress channeled exclusive judicial review of Committee decisions. *See* 16 U.S.C. § 1536(n). This exclusive review scheme is fatal

1

to Plaintiff's lawsuit because it strips this Court's jurisdiction to hear piecemeal attacks on the exemption process.

*Standing.* Plaintiff also lacks standing to challenge the Chairman's decision to convene the Committee. Plaintiff concedes that the meeting itself won't cause irreparable harm, so it is forced to rely on the future action it imagines the Committee will take. But Plaintiff's fears about how an unspecified future Committee action may affect animals in the Gulf of America is speculative. Plaintiff will have a full opportunity to explain why it has standing—short of speculation—once the Committee takes any actual final action on an exemption.

*Merits.* Plaintiff's core argument assumes that the Committee may consider an exemption only after it gets an application and follows certain statutory processes. That is wrong. The statute says that "[n]otwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1536(j). The Chairman convened the March 31 meeting based on the Secretary of War's national-security determination. Plaintiff also claims that the Committee must immediately disclose any Committee records. But this attempt to impose a rolling disclosure obligation finds no support in the statutory text, which says nothing about when the Committee must make its records publicly available. *See id.* § 1536(e)(5)(D). Finally, the Committee is required only to make its meeting "open to the public," *id.*, and livestream viewing does just that. It does not matter that livestreaming was unavailable when Congress passed the statute, because Congress said nothing about the means by which Committee meetings must be made open to the public.

The Court should deny Plaintiff's motion and dismiss this case.

2

**BACKGROUND**

A.    **The Endangered Species Act**

The ESA directs the Secretary of the Interior and the Secretary of Commerce to maintain a list of all species classified as "endangered" or "threatened." 16 U.S.C. § 1533; *id.* § 1532(6) (defining "endangered species"), (20) (defining "threatened species"). Listed species are entitled to the protections of the Act. *See id.* §§ 1533(d), 1536, 1538.

1.    **ESA Section 7**

The ESA requires that each federal agency "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [protected species' critical] habitat." 16 U.S.C. § 1536(a)(2). This requirement does not apply when the agency action is covered by an exemption. *Id.*

To carry out this mandate, the federal agency must consult with the Fish and Wildlife Service ("FWS") and/or the National Marine Fisheries Service ("NMFS") whenever a proposed action may affect a listed species or its critical habitat. *Id.* § 1536(a)(2)–(3); 50 C.F.R. § 402.14(a). The agency that is authorizing, funding, or carrying out an action is called the action agency. NMFS and FWS are called the consulting agencies.

Consultation can be either informal or formal. 50 C.F.R. §§ 402.13 to .14. Formal consultation culminates in the issuance of a "biological opinion" ("BiOp"), in which the consulting agency examines the proposed action's anticipated effects on listed species and critical habitat and opines on whether the action is likely to jeopardize the species' continued existence or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(h). If the consulting agency issues a "jeopardy" finding, the BiOp must

identify "reasonable and prudent alternatives" to the proposed action, if any exist. 50 C.F.R. § 402.14(h)(1)(iv)(A), (h)(2).

Even where the proposed action is not likely to jeopardize a species, it may cause "incidental take." *Id.* § 402.02 (defining "incidental take" as "takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant").[1] In such cases, the consulting agency issues an Incidental Take Statement ("ITS") specifying the extent of anticipated take, identifying "reasonable and prudent measures" to minimize impact, and setting forth terms and conditions for their implementation. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). Compliance with the ITS provides a safe harbor from civil and criminal liability for incidental take. 16 U.S.C. § 1536(o)(2).

### 2.    The Committee

Congress recognized that there are circumstances where agency actions should be exempt from the ESA. It thus created the Endangered Species Committee and gave it authority to grant blanket exemptions for any agency action. *See id.* § 1536(e), (h). The Committee consists of six permanent members: the Secretary of the Interior (who serves as chair), the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisors, the Administrator of the Environmental Protection Agency, and the Administrator of the National Oceanic and Atmospheric Administration. *Id.* § 1536(e)(3)(A)–(F). In certain circumstances, the President appoints one person from each affected State. *Id.* § 1536(e)(3)(G).

---

[1] The ESA prohibits "any person" from engaging in actions collectively referred to as "take"—including harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting—of any endangered species without a permit or other exemption. 16 U.S.C. §§ 1532(19), 1538(a)(1)(B), 1536(b)(4), 1536(o)(2), 1539. The take prohibition can be extended to threatened species. *Id.* § 1533(d). Civil and criminal penalties attach to violations of the take prohibition. *Id.* § 1540.

4

The Committee is empowered to "sit and act at such times and places . . . as the Committee deems advisable" "for the purpose of carrying out its duties" under the statute. *Id.* § 1536(e)(7)(A). The Committee is required to meet at the call of the Secretary of the Interior in his role as Chairman or at the call of five Committee members. *Id.* § 1536(e)(5)(C). Five members constitute a quorum. *Id.* § 1536(e)(5)(A). When the Committee has convened, its meetings and records must be open to the public. *Id.* § 1536(e)(5)(D); 50 C.F.R. § 453.05(e).

### 3.    Exemptions

An applicant may apply in writing for an exemption after the consulting agency makes specific findings. *See* 16 U.S.C. § 1536(g)(1), (g)(2)(A); 50 C.F.R. § 451.02(b). An application triggers a process that involves a Federal Register notice summarizing the application, an administrative hearing, a written report, and, generally, a Committee decision that makes specific findings. 16 U.S.C. §§ 1536(g)(2)(B), (g)(3)–(5), (h)(1).

Alternatively, the Secretary of War may initiate an exemption. As the ESA provides: "Notwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j); *see also* 50 C.F.R. § 453.03(d).[2] When the Secretary of War initiates an exemption, there is no application. And the application procedures, along with "any other provision" in the ESA, do not apply. *See* 16 U.S.C. § 1536(j).

When the Committee grants an exemption, the agency action is exempt from the ESA's requirements. *See* 16 U.S.C. §§ 1536(a)(2), 1536(o)(1). The Committee's final order is published in the Federal Register. *Id.* § 1536(*l*)(1); 50 C.F.R. § 453.03(b).

---

[2] The Secretary of War may also make such a finding for an agency action that is the subject of an exemption application.

The Committee's final determination constitutes final agency action under the Administrative Procedure Act ("APA"). 16 U.S.C. § 1536(h)(1). Jurisdiction to review the decision lies exclusively in the U.S. Court of Appeals for the circuit in which the agency action is being carried out. *Id*. § 1536(n).

### B.    ESA Section 7 consultation on oil and gas development in the Gulf of America

Federal agencies have consulted with NMFS regarding oil and gas activities in the Gulf of America since the late 1970s, initially on a lease-sale-by-lease-sale basis. *See* NMFS Biological and Conference Opinion on BOEM and BSEE's Oil and Gas Program Activities in the Gulf of America, at 7 (May 20, 2025), *available* at https://www.fisheries.noaa.gov/s3//2025-05/BOEM-BSEE-Gulf-of-America-Oil-and-Gas-Program-BiOp-5.20.25.pdf. In the 2000s, NMFS began consulting with action agencies on certain activities programmatically, though individual lease sale consultations continued in parallel. *See id*.

In 2010, NMFS and the two agencies within the Department of the Interior that oversee the Gulf's oil and gas activities, the Bureau of Ocean Energy Management ("BOEM") and Bureau of Safety and Environmental Enforcement ("BSEE"), agreed to pursue a single programmatic, Gulf-wide ESA consultation. That consultation covers oil and gas exploration, development, and production activities in the Gulf of America associated with BOEM and BSEE's Outer Continental Shelf Oil and Gas Program. *Id.* at 6, 10. After years of interagency review, NMFS issued a final programmatic BiOp in March 2020. *Id.* at 8-9. NMFS issued the current biological opinion for oil and gas activities in the Gulf of America in May 2025.[3]

---

[3] NMFS issued the current BiOp after a district court vacated the 2020 BiOp and deferred the vacatur date. *See Sierra Club v. Nat'l Marine Fisheries Serv.*, 797 F. Supp. 3d 440 (D. Md. 2024), *as amended*, No. 8:20-cv-3060, 2024 WL 6817999 (D. Md. Oct. 21, 2024). The current BiOp is being challenged in two lawsuits. *See* No. 8:25-cv-1627 (D. Md.); No. 2:25-cv-691

Separately, FWS issued its own biological opinion on BOEM and BSEE's Gulf oil and gas program in April 2018. The agencies later reinitiated to consider new information. In March 2025, FWS confirmed that the new information did not change the conclusions in its 2018 biological opinion.[4]

### C.      The Secretary of the Interior announces a Committee meeting

On March 13, 2026, the Secretary of War notified the Secretary of the Interior that the Secretary of War found it necessary for reasons of national security to exempt from the ESA's requirements all Gulf of America oil and gas exploration and development activities associated with BOEM and BSEE's Outer Continental Shelf Oil and Gas Program. Decl. of Christopher Danley [ECF 12-1] ¶ 2. The Secretary of War requested that the Secretary of the Interior, in his capacity as Chairman of the Committee, convene a Committee meeting as soon as practicable. *Id.* ¶ 3. The Secretary of the Interior has not received an application for an exemption. *Id.* ¶ 5.

Later that day, the Secretary of the Interior filed with the Office of the Federal Register a notice announcing that the Endangered Species Committee will meet on March 31, 2026, regarding an ESA exemption for Gulf of America oil and gas activities. *See* 91 Fed. Reg. 12672. The notice provides that the meeting will be open to the public via livestream and will be recorded so the public may view the meeting at a later time. *Id.*

---

(W.D. La.). One court concluded that NMFS's jeopardy determination for the Rice's whale, and, therefore, the reasonable and prudent alternative, were flawed. *Louisiana v. Nat'l Marine Fisheries Serv.*, -- F. Supp. 3d --, No. 2:25-cv-691, 2026 WL 184236 (W.D. La. Jan. 23, 2026). The Court remanded the 2025 BiOp to the agency but did not vacate the BiOp, leaving the jeopardy finding in place for now. W.D. La. No. 2:25-cv-691, ECF 59. Briefing in the other case is ongoing.

[4] Both of FWS's decisions are being challenged in litigation. *See Ctr. for Biological Diversity v. Burgum*, No. 1:24-cv-990-DLF (D.D.C.).

7

**D.    Plaintiff files this baseless lawsuit**

Five days after the meeting notice was made publicly available online, Plaintiff filed this lawsuit seeking to enjoin the Secretary of the Interior from convening the Committee. *See* Compl. [ECF 1]. Plaintiff asserts three claims for review: (1) unlawful withholding of public notification and information and access to the March 31 meeting under the APA; (2) convening the Committee in violation of the APA; and (3) failure to comply with the ESA's disclosure obligations, for which Plaintiff seeks relief under the Mandamus Act, 28 U.S.C. § 1361.[5] The next day, Plaintiff moved for a temporary restraining order ("TRO"), asking the Court to enjoin the Secretary of the Interior from convening the Committee until further order of the Court.

## STANDARD OF REVIEW

"Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, provides an 'extraordinary remedy' that is 'never awarded as of right.'" *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 55–56 (D.D.C. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To prevail on a motion for a temporary restraining order, the movant must show "(1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017); *accord Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 342 (2024) (district courts must follow the traditional four-part test

---

[5] Although the Complaint contains a claim under the Mandamus Act, Plaintiff does not rely on that claim in its motion for TRO. *See* Pl.'s Mem.

in evaluating requests for preliminary relief). If the movant fails to show irreparable harm, the motion must be denied, regardless of the movant's showing on the other factors. *England*, 454 F.3d at 297. Because a temporary restraining order or preliminary injunction is "a drastic" remedy, it may only be granted if the movant carries its burden of persuasion "by a clear showing." *Mdewakanton Sioux Indians*, 255 F. Supp. 3d at 51 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Before proceeding, federal courts must assure themselves that they have subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"). It is the duty of a court to dismiss an action when it becomes apparent subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3); *Green v. Dep't of Com.*, 618 F.2d 836, 839 (D.C. Cir. 1980); *Al Janko v. Gates*, 831 F. Supp. 2d 272, 278 (D.D.C. 2011). A plaintiff's failure to establish the court has subject matter jurisdiction also requires denial of a temporary restraining order because the plaintiff is not likely to succeed on the merits of its claims. *See Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 6, 11 (D.D.C. 2025).

## ARGUMENT

### A.    Plaintiff is trying to challenge non-final agency action in the wrong court, and it lacks standing to block a meeting.

Plaintiff's complaint and motion do not show that the Court has subject matter jurisdiction over Plaintiff's claims. *See* Pl's. Mem. [ECF 9-1]. As demonstrated below, Plaintiff has failed to plead essential elements of its claims under the APA, exclusive jurisdiction to review actions of the Committee lies in the courts of appeals, and Plaintiff lacks Article III standing.

### 1.    Convening the Committee is not final agency action.

Plaintiff has failed to plead an essential element of an APA claim: "final agency action." 5 U.S.C. § 704. "[W]ithout final agency action, 'there is no doubt that appellant would lack a cause of action under the APA.'" *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). To be final, an agency action must (1) "consummat[e] . . . the agency's decision-making process" and (2) determine legal "rights or obligations," or create "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). There exists no statutory review provision in the ESA that authorizes judicial review of agency action beyond that provided for in the APA. *See Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).

Not only is "final agency action" required to assert an APA claim, Congress was explicit about what constitutes final agency action in the ESA's exemption process. There is no "final agency action" unless or until the Committee grants or denies an exemption, and (as we explain below) such a final agency action is only reviewable in the courts of appeals. *See* 16 U.S.C. § 1536(h) ("Any final determination by the Committee under this subsection shall be considered final agency action for purposes of chapter 7 of title 5."); *id.* § 1536(n) (providing for review in the courts of appeals under the APA only "of any decision of the Endangered Species Committee under subsection (h)"). This makes sense, as only a final Committee determination can have legal consequences or effects. *See Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020). Further, Congress provided for review of final Committee decisions, *see* 16 U.S.C. § 1536, and the Secretary of the Interior's notice convening a Committee meeting is not a *Committee* decision. Congress nowhere specified that intermediate procedural decisions, like the Chairman's decision to convene a meeting, are subject to review.

Plaintiff nonetheless asserts that the "Secretary's decision to convene the Committee on March 31, 2026," as embodied in the notice, "is a final agency action." Compl. ¶ 72. That is clearly wrong. The decision to convene a meeting "regarding an exemption," *see* 91 Fed. Reg. 12672, is not the consummation of the decision-making process; it is a preliminary step so that the Committee can meet to determine what action it will take. The decision that results from the meeting may or may not consummate the decision-making process, but the notice plainly does not.

Nor does the notice of the meeting determine rights or obligations or have a legal consequence. Again, such an action might follow the meeting, but it has not yet occurred. *See Ass'n of Admin. L. Judges v. U.S. Office of Personnel Mgmt.*, 640 F. Supp. 2d 66, 73 (D.D.C. 2009) (agency notice that it planned to post a vacancy announcement within the next few days not a final agency action). Plaintiff has not cited any case, and we know of none, where a court has held that a meeting notice is a final agency action under the APA.

The fact that convening the Committee without following certain procedures or providing information in advance (even assuming these were required, which they are not) could lead to indirect consequences for Plaintiff down the line does not change the analysis. Adverse effects "accompany many forms of indisputably non-final government action." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 645 (6th Cir. 2004). For example, "[i]nitiating an enforcement proceeding against a company . . . may have a devastating effect on the company's business, but that does not make the agency's action final." *Id.* What matters here is that a decision by the Secretary of the Interior to convene a meeting of cabinet-level officials has no "direct and appreciable legal consequences" for Plaintiff. *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 640 (D.C. Cir. 2019). Courts do not grant prospective relief on proposed agency actions, even if they seem

11

likely to occur. *In re Murray Energy Corp.*, 788 F.3d 330, 333–34 (D.C. Cir. 2015) (Kavanaugh, J.) (declining to consider challenge to proposed rule).

Perhaps Plaintiff understands that it would face long odds if it waited to challenge a final Committee decision. Among other things, it would need to show that any purported errors affected the Committee's ultimate decision. *See FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 588 (2025) ("The most natural interpretation of the APA's language is thus that reviewing courts should adapt the 'rule of prejudicial error' applicable in ordinary civil litigation (also known as the harmless-error rule) to the administrative-law context."). Plaintiff's attempt to make that showing may be hopeless where, as here, the Secretary of War has made a national security finding. *See* 16 U.S.C. § 1536(j) ("[T]he Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security."). But that is not a reason to cast aside the APA's "final agency action" requirement.

### 2. Plaintiff's claims must be heard in the court of appeals.

Not only has Plaintiff failed to challenge a final agency action, judicial review of the Committee's actions—including any procedural actions inhering in convening a meeting about an exemption—may be had only in the courts of appeals. Section 7(n) provides that "[a]ny person . . . may obtain judicial review . . . of any decision of the [Committee] under subsection (h)" by filing a petition in the appropriate court of appeals within 90 days of the decision. 16 U.S.C. § 1536(n). That provision precludes judicial review in this Court of any exemption decision by the Committee. A statute providing that plaintiffs "may" obtain judicial review in the court of appeals vests jurisdiction *exclusively* in the court of appeals. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 114 (2018) (statute providing that review "may be had" in the court

of appeals (33 U.S.C. § 1369(b)) vested jurisdiction "directly and exclusively in the federal courts of appeals"); *Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1012 & n.5 (D.C. Cir. 2013) (citing six other examples and explaining the background principle that courts interpret jurisdictional statutes using "may" "to confer exclusive jurisdiction" in the courts of appeals).

Relatedly, "[i]f a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018); *Bombardier, Inc. v. U.S. Dep't of Lab.*, 145 F. Supp. 3d 21, 31 (D.D.C. 2015) (Contreras, J.) ("special statutory review scheme" is "the exclusive means of obtaining judicial review"). This principle applies even where a plaintiff believes this Court presents a better forum to raise its concerns. *See Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (other available remedy was adequate even if less effective than the APA remedy). Any challenge to the Committee's grant or denial of an exemption must be brought in the court of appeals. *See* 16 U.S.C. § 1536(n).

Plaintiff cannot avoid the exclusive review scheme by challenging discrete parts of the Committee's decision-making process before the Committee issues a final exemption determination. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action"); *see also Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945-48 (D.C. Cir. 2004) (holding that APA review was unavailable when a separate statute provided adequate legal remedies available to plaintiffs), *abrogated on other grounds, as recognized in Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) (addressing whether APA's adequacy-of-remedy bar was jurisdictional). The statute channels judicial review of "any

13

decision of the Endangered Species Committee under subsection (h)." 16 U.S.C. § 1536(n). The Committee is meeting regarding an exemption, and its decisions about when to disclose its records and how to make its meeting open to the public are inherently tied to subsection (h), which deals with exemptions. The pleadings confirm that Plaintiff is taking aim at the "exemption process." *See* Compl. ¶ 10 (allegation about "[t]he Secretary's decision to undertake the exemption process").

After all, when a statute "commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Sierra Club v. Thomas*, 828 F.2d 783, 787 (D.C. Cir. 1987) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 75 (D.C. Cir. 1984)), *partly abrogated by statute as recognized by Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015) (addressing jurisdictional changes to 1990 Clean Air Act amendments). Plaintiff's request that the Court review the Secretary's notice convening a meeting would also "affect" the "future jurisdiction," *see Sierra Club*, 828 F.2d at 787, of the courts of appeals and, for that reason too, may be considered only in the appropriate circuit court. Plaintiff's core argument is that the procedural requirements for convening the Committee regarding an exemption are unmet. *See* Compl. ¶¶ 74–77; Pl.'s Mem. at 17–20. As we explain below, that argument is wrong. But the important jurisdictional point is that this question may be presented to a court of appeals in any challenge to a final Committee decision granting an exemption. By seeking relief from this Court, Plaintiff's suit conflicts with Congress's choice to limit review of exemption decisions to the courts of appeals. *See Thomas*, 828 F.2d at 787. Accordingly, the jurisdictional channeling provision bars this Court from considering Plaintiff's request to enjoin the meeting. *See* 16 U.S.C. § 1536(n).

14

Plaintiff's request for a TRO prohibiting the Committee from meeting is similar to the plaintiff's request for an injunction against Federal Trade Commission proceedings in *Ukiah Adventist Hospital v. F.T.C.*, 981 F.2d 543 (D.C. Cir. 1992). There, the D.C. Circuit held that the requested relief might affect its future jurisdiction because an injunction against the Commission proceedings could defeat "the statutory obligation of a Court of Appeals to review [the Commission's order] on the merits." *Id*. at 549. The district court in *Seminole Pipeline Co. v. Vogt*, 794 F. Supp. 438 (D.D.C. 1992), reached a similar conclusion. The plaintiff sought to enjoin the National Transportation Safety Board from holding a hearing as part of an investigation that might lead to future regulation. *Id*. at 439. Because the National Transportation Safety Act vests review of the Board's decisions in the courts of appeals, the district court held that it lacked jurisdiction to enjoin the hearing. *Id*. at 441 (citing *TRAC*, 750 F.2d at 75, and *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 742–44 (1985)). So too here. If this Court were to enjoin the Committee from meeting, and thereby prevent the Committee from taking any action on an exemption, it would run counter to a circuit court's exclusive jurisdiction to review such actions.

The same goes for Plaintiff's challenge to decisions about when to disclose Committee records and how to make the meeting open to the public. These are attacks on the process by which the Committee may reach a decision to grant an exemption, Compl. ¶¶ 65–72; Pl.'s Mem. at 13–17, and those procedural questions also fall within the scope of review of any final exemption decision. *See also Chiron Corp. v. U.S. Nat'l Transp. Safety Bd.*, 27 F. Supp. 2d 257, 261 (D.D.C. 1998) (concluding that action seeking judicial review of agency's denial of request for documents from an agency investigation could only be resolved in the court of appeals, because the appellate court had exclusive jurisdiction). If the Court were to entertain Plaintiff's

15

arguments on these issues now, it would allow piecemeal review in contravention of Congress's decision to channel review of exemption decisions to the courts of appeals. Plaintiff must therefore assert any procedural rights in an appropriate circuit court, not this Court.

### 3.    Plaintiff lacks standing to challenge the Secretary's notice convening the Committee.

Plaintiff must show standing for each claim it raises and each form of relief it seeks. *Citizens for Const. Integrity v. Census Bureau*, 115 F.4th 618, 630 (D.C. Cir. 2024). Plaintiff claims "that the predicate requirements for convening the Committee have not been met" because the Committee may consider an exemption application only after the consulting agencies make a specific finding. Pl.'s Mem. at 17-20. Because they did not make that finding here, the argument goes, "there is no lawful basis for the Secretary to convene the Committee as announced in the" notice. *Id.* at 20. Plaintiff's purported injury—that a future Committee action will harm its member's interest in protected species—is not caused by the Secretary's notice convening the Committee. That alleged injury is also speculative because it depends on a future action that may not cause the chain of events that Plaintiff fears.

To show standing, a plaintiff must show, first, "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Second, the plaintiff must show a causal connection between the injury and the complained-of conduct. *Id.* Third, the plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (cleaned up). An organization may establish standing by showing (in addition to other requirements) the standing of its members. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiff relies on a future injury to protected species. That theory fails twice over.

16

First, Plaintiff basically concedes the meeting itself will not cause any harm to protected species. Rather, Plaintiff is forced is to rely on a future Committee action. *See* Pl.'s Mem. at 26 (arguing that its members' "interests are threatened by the sweeping exemption from the ESA that is the declared focus of the Committee's unlawfully secretive meeting"). Plaintiff thus fails to show the Secretary's notice convening the Committee will harm protected species. *See, e.g.*, *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) ("The [Supreme] Court also has made clear that an injury will not be 'fairly traceable' to the defendant's challenged conduct . . . where the injury depends not only on that conduct, but on independent intervening or additional causal factors.").

Second, even if Plaintiff could rely on the Committee's future action to show injury, Plaintiff's concerns about the effects of that action are speculative. *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are, however, 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (alteration in original) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 157 (1990))); *see Lujan*, 504 U.S. at 560 (injury cannot be "conjectural or hypothetical"). At this point, the Committee has not acted, and Plaintiff cannot show an actual and imminent injury based on a future action. If the Committee does in fact take some action that harms Plaintiff's members, it can attempt to seek review of that final decision. *Cf. United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378-81 (D.C. Cir. 1984) (rejecting standing based on a claim that an executive order could lead to agencies taking future adverse actions against plaintiff); *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 223 (D.D.C. 2020) ("To be sure, the government might issue regulations that [plaintiff] does not like. But it is just as possible that it will not. 'Article III standing requires more than *the*

*possibility* of potentially adverse regulation.'" (quoting *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013))), *vacated as moot sub nom. Ctr. for Democracy & Tech. v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021).

\*    \*    \*

Because Plaintiff lacks standing to challenge the Secretary's notice convening the Committee, the Court lacks jurisdiction to enjoin the Secretary from convening the Committee. Even assuming Plaintiff has standing to challenge the Secretary's compliance with what Plaintiff calls the ESA's public notification and information access requirements, enjoining the meeting would not be an appropriate remedy for those claims. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (alteration in original) (citation omitted)). A violation premised on a failure to disclose documents would be remedied by disclosure, and a violation premised on a failure to permit in-person attendance would be remedied by in-person attendance. *Cf. Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971) ("[T]he nature of the violation determines the scope of the remedy.").

**B.        Plaintiff fails to meet its burden for obtaining extraordinary injunctive relief.**

The above threshold problems should resolve this case. But Plaintiff also has not shown "(1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief." *See Mdewakanton Sioux Indians*, 255 F. Supp. 3d at 51. The Court should thus deny Plaintiff's extraordinary request to enjoin an Executive Branch committee meeting.

**1.    Plaintiff has not shown likelihood of success on the merits.**

When a party does not show a likelihood of success on the merits, there is no need to consider any remaining factors. *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011). Here, Plaintiff's claims suffer from fatal threshold flaws, and the Court lacks jurisdiction. For that reason alone, the Court should deny Plaintiff's motion. *See Nat'l Treasury Emps. Union*, 770 F. Supp. 3d at 11. Separately, Plaintiff has not shown that it is likely to succeed on any of its claims.

**a.    Plaintiff cites no authority prohibiting a Committee meeting.**

Plaintiff argues that the Committee cannot lawfully convene for two reasons: (1) the consulting agencies did not make threshold findings or follow procedures that are necessary for an exemption application; and (2) the litigation challenging NMFS's BiOp provides no basis for convening the Committee. Pl.'s Mem. at 17-20.

Contrary to Plaintiff's argument, the Committee is empowered to meet "for the purpose of carrying out its duties" under any circumstances "the Committee deems advisable." 16 U.S.C. § 1536(e)(7)(A). And when the Chairman calls a Committee meeting, as he did here, "[t]he Committee shall meet." *Id.* § 1536(e)(5)(C).

Plaintiff cites a litany of procedures and statutory provisions, but none says anything that would prohibit the Committee from meeting. As Plaintiff tells it, because the consulting agencies have not made certain findings, "there can be no lawful application for an exemption to the Committee, and accordingly, there is no lawful basis for the Secretary to convene the Committee." Pl.'s Mem. at 20. But even if Plaintiff were right that some preliminary requirement for granting an exemption had not been satisfied, that would not mean the Committee cannot meet to "consider" an exemption. There is simply nothing in the statute prohibiting the

19

Committee from meeting. Plaintiff's extraordinary request to enjoin a government meeting should be rejected on that basis alone.

Plaintiff is wrong, moreover, that the Committee may grant an exemption only after it receives and processes an application. To the contrary, the Committee must grant an exemption based on the Secretary of War's national security finding, "[n]otwithstanding any other provision" of the ESA. *Id.* A "notwithstanding" clause is a clear signal of Congressional intent to override conflicting provisions elsewhere in a statute. *See, e.g.*, *Am. Fed. of Gov't Emps. TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 84 (D.D.C. 2006) (collecting cases); *see also Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (same); *Liberty Maritime Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) (regarding "notwithstanding" language, a "clearer statement" of intent to supersede other statutory provisions "is difficult to imagine"). The statute's "notwithstanding" provision necessarily dispenses with inapplicable procedural provisions that apply to applications for exemptions, such as the submission itself, the hearing on the application, and the report of the Secretary of the Interior or Commerce on the application. *See* 16 U.S.C. § 1536(g). At a minimum, Plaintiff has not made a clear showing that it is likely to succeed on its argument that the Committee may meet to consider an exemption only when it receives and processes an application, and this dooms Plaintiff's motion. *See Mdewakanton Sioux Indians*, 255 F. Supp. 3d at 51.

> **b.    The March 31 meeting will be open to the public via livestream.**

Opening the March 31 Committee meeting to the public via livestream satisfies the ESA's requirement that "meetings of the Committee . . . be open to the public." 16 U.S.C. § 1536(e)(5)(D). The meeting will also be recorded and made available to the public as a recording for 60 days. *See* 91 Fed. Reg. 12672.

20

There is no common law or constitutional right to attend Executive Branch meetings in person. *Houchins v. KQED, Inc*., 438 U.S. 1, 14 (1978) ("There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy."). As a result, any rights must be conferred by Congress, not the courts or common-law principles.

Here, the ESA does not grant a right to attend Committee meetings "in person." To begin, the plain language of the statute requires only that the meeting be open to the public, not that the public be permitted to attend in person. 16 U.S.C. § 1536(e)(5)(D). Congress knows how to create "in person" requirements; it did so when specifying the Committee must vote "in person." *Id.* § 1536(h)(1). But Congress did not use the words "in person" when ordering that the Committee's meetings be open to the public. *Id.* § 1536(e)(5)(D). When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation omitted); *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) ("differences in language . . . convey differences in meaning") (quotation omitted).

This reading is supported by the context surrounding the open meeting requirement. *Deal v. United States*, 508 U.S. 129, 132 (1993) (it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"), *superseded on other grounds by statute, see Hewitt v. United States*, 606 U.S. 419, 423-24 (2025). In some contexts, in-person requirements can foster participation. *See We the People, Inc., of the U.S. v. Nuclear Regul. Comm'n*, 746 F. Supp. 213, 217 (D.D.C. 1990) (distinguishing between procedures allowing for public observation and those allowing public participation). When providing for public meetings

21

in the ESA, however, Congress was not facilitating the public's right to *participate* in Committee meetings; for instance, by communicating their objections to the process. The public has no categorical right to participate in the exemption process. The statute provides no right for the public to participate in all Committee meetings, particularly where there is no application for an exemption. *See* 16 U.S.C. § 1536. Congress instead was concerned with providing transparency, and a livestream accomplishes that goal. Indeed, a livestream "will offer more members of the public the opportunity to observe proceedings than had only physical access been permitted." *Lawyers' Comm. for C.R. Under L. v. Presidential Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54, 68 (D.D.C. 2017).[6]

Courts have declined to interpret similar open meeting requirements, like those in the Sunshine Act, 5 U.S.C. § 552b(b) (noting that "every portion of every meeting of an agency shall be open to public observation"), to require in-person meetings. Congress enacted the Sunshine Act in 1976, just two years before enacting the ESA's exemption procedures. The Sunshine Act is therefore instructive for interpreting the ESA's open meeting requirement. In the Sunshine Act, Congress intended to open agency deliberations to "public view." *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 928 (D.C. Cir. 1982). Congress "believed that *increased openness* would enhance citizen confidence in government, encourage higher quality work by government officials, stimulate well-informed public debate about government programs and

---

[6] This is particularly true when the meeting involves a group of cabinet officials, the gathering of which poses distinct security risks. Threats against public officials have surged recently. Danley Decl. ¶ 9. These risks are best managed by the Executive Branch officials, which provides another reason why the Court should not second-guess the Secretary of the Interior's decision to provide the public with access via a livestream. *Cf. Boumediene v. Bush*, 553 U.S. 723, 797 (2008) ("Unlike the President and some designated Members of Congress, neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people.").

policies, and promote cooperation between citizens and government." *Id.* None of these objectives requires "in person" attendance, which is why courts have interpreted federal open meeting requirements to allow for attendance through electronic means.

For example, in *Lawyers' Committee*, 265 F. Supp. 3d 54, the court construed the Federal Advisory Committee Act's ("FACA") requirement that meetings be "open to the public" to allow meetings to be open via livestream. Like the ESA, FACA provides that advisory committee meetings "shall be open to the public." 5 U.S.C. § 1009(a) (formerly cited as 5 U.S.C. app. 2 § 10). And, like the ESA, FACA "does not prescribe the manner in which advisory committee meetings are supposed to be 'open to the public.'" *Lawyers' Comm.*, 265 F. Supp. 3d at 67. The court upheld the use of a "livestreaming service used by the White House for events with substantial viewership," finding that such a platform is both reasonably accessible to the public and accommodates a reasonable number of viewers—the objectives of providing an open meeting in the first instance. *Id*. The court in *McCaleb v. Long*, No. 3:22-CV-00439, 2023 WL 2602507 (M.D. Tenn. Mar. 22, 2023), likewise found that a statutory mandate for meetings to be "open to the public" can be satisfied without in-person access, so long as virtual access is provided. *Id*. at *6.

Plaintiff's argument—that the requirement for a meeting to be open to the public means in-person attendance because no livestreaming was available in 1978 (Pl.'s Mem. at 15-16)—misunderstands statutory interpretation. To be sure, "it's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018) (alterations in original) (citation omitted). Here, the relevant word is "open." 16 U.S.C. § 1536(e)(5)(D). When Congress adopted this language, "open" meant

23

"completely free from concealment: exposed to general view or knowledge."[7] But that does not mean that we are forever limited to the forms of public openness that existed in 1978. *See Wis. Cent. Ltd*, 585 U.S. at 284. "While every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Id.* While open must always mean exposed to general view or knowledge, what qualifies as open "may depend on the facts of the day." *Id.* ("Take electronic transfers of paychecks. Maybe they weren't common in 1937, but we do not doubt they would qualify today as 'money remuneration' under the [Tax Act's] original public meaning."). Livestreaming exposes the Committee's meeting to the public's general view or knowledge. It thus qualifies as "open to the public" under the ESA, just as "electronic transfers" qualify as "money remuneration" under the Tax Act of 1937. *See id.*

Plaintiff points to *Portland Audubon Society v. Endangered Species Committee* (Pl.'s Mem. at 16), which mentioned "[t]he public's right to attend all Committee meetings." 984 F.2d 1534, 1542 (9th Cir. 1993). But nothing in that court's opinion addresses in-person attendance by the public. And livestreaming does allow the public to attend the Committee's meeting. Plaintiff also claims that Committee meetings "must be equally open to all interested parties." Pl.'s Mem. at 16. It's unclear how that helps Plaintiff's case because livestream access provides equal access to a broader segment of the population than in-person access.

Finally, Plaintiff is wrong that it has a right to comment under Section 554(c)(1) of the APA. Pl.'s Mem. at 16-17. To be sure, in certain circumstances when the Committee is considering an application, it must follow certain APA requirements. *See* 16 U.S.C. § 1536(g)(4), (g)(6) ("[T]he consideration of any application for an exemption under this section

---

[7] *Webster's Collegiate Dictionary* 796 (1979); *see also Webster's Third New Int'l Dictionary* 1579 (1976) ("completely free from concealment: exposed to general or particular perception or knowledge").

and the conduct of any hearing under this subsection shall be in accordance with [§ 554] . . . .”). Because the Committee is not meeting to consider an application, there is no right to public participation. Accordingly, in-person attendance is unnecessary. Thus, the nature of the meeting does not require the Committee to consider facts or argument presented by Plaintiff.

Plaintiff has not made a clear showing that the ESA mandates in-person attendance.

### c. Plaintiff has not shown that Defendant violated any public notification or information requirements.

Plaintiff makes three arguments about public notification and information access requirements: (1) that the notice is deficient because it does not summarize the exemption application or identify the applicant, (2) that the notice is deficient because it does not say how the public can access records related to any application, and (3) that the Secretary has failed to make Committee records available to the public. Pl.’s Mem. at 13-15.

First, the notice does not summarize the application or identify the applicant because there is no application or applicant. *See* Danley Decl. ¶ 5. Plaintiff has thus made no clear showing that the notice violates any statutory requirement.

Plaintiff’s attempt to analogize to cases where agencies violated a clear statutory duty and frustrated the public’s ability to participate falls flat. Pl.’s Mem. at 14. Those cases deal with agency notices that memorialize final substantive agency decisions, not initial procedural steps. In the first, the Environmental Protection Agency sought to terminate several grants but failed to provide the grantees the opportunity to challenge the termination or a reasoned explanation to which they could object in accord with applicable regulations. *Climate United Fund v. Citibank*, 775 F. Supp. 3d 335, 347 (D.D.C 2025). In the second, the Fish and Wildlife Service failed to publish a key piece of a permit application as required by statute, thereby frustrating public comment on the application. *Gerber v. Norton*, 294 F.3d 173, 179 (D.C. Cir. 2002). Specific legal

requirements required those agencies to provide specific information at certain times in those administrative processes, *e.g.*, "at every stage of the proceeding" in *Gerber*, 294 F.3d at 179. The statute here, by contrast, imposes no similar obligation before convening a Committee meeting.

Unlike the statutory provisions at issue in Plaintiff's cited cases, the statute here does not grant Plaintiff, nor any other member of the public, the right to participate in every Committee meeting, or to comment on every action the Committee might take. Moreover, the agency decisions in Plaintiff's cases were reviewed *after* the agencies' final decisions.

Second, Plaintiff's related theory that the notice is deficient because it fails to address records disclosure likewise lacks merit. Pl.'s Mem. at 15. Plaintiff makes no attempt to ground this purported requirement in the statutory text—because there is no textual requirement. And we know that Congress knows how to dictate the substance of a Federal Register notice. For example, ESA Section 7(*l*)(2) requires the Council on Environmental Quality to publish a Federal Register notice of the availability of certain annual reports it receives (though subject to no deadlines). The express requirement of Federal Register notice in ESA Section 7(*l*)(2) indicates Congress did not intend to mandate a Federal Register notice of availability of Committee records, or to mandate a deadline for such notice. *See* 16 U.S.C. § 1536(e)(5)(D) (containing no such language); *Bluewater Network v. E.P.A.*, 370 F.3d 1, 14 (D.C. Cir. 2004) ("it is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"); *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021) (same canon).

Third, Plaintiff has not shown that Defendant violated any duty to make Committee records "open to the public." *See* 16 U.S.C. § 1536(e)(5)(D). The Secretary is under no legal

26

obligation to make records available to Plaintiff or the public *before* convening any meeting of the Committee, much less one about a national security exemption. Plaintiff points to no language in Section 7 that creates a categorical, non-discretionary duty to produce records of the Committee's work before the Committee convenes. "[A]ll meetings and records of the Committee shall be open to the public." *Id.* This provision contains no timetable or deadline. That alone defeats Plaintiff's claim. Courts may not impose the extra-statutory procedural requirements Plaintiff requests on the Secretary or Committee because "agencies should be free to fashion their own rules of procedure." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978)).[8] In any event, the Committee will make any Committee records open to the public the day it meets. Danley Decl. ¶ 8.

### 2.      Plaintiff has not shown irreparable harm.

The D.C. Circuit "has set a high standard for irreparable injury." *England*, 454 F.3d at 297. The injury to the movant "must be both certain and great," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam), and it must be "beyond remediation," *England*, 454 F.3d at 297-98. The movant must "substantiate" its "claim that irreparable injury is 'likely' to occur" with evidence. *Wis. Gas Co.*, 758 F.2d at 674. It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Id.* Failure to meet this "high standard" renders a plaintiff ineligible for preliminary injunctive relief, regardless of the remaining factors. *England*, 454 at 297.

---

[8] And of course Plaintiff has not shown that Defendant violated a statutory requirement by failing to disclose records related to any application because those documents do not exist when, as here, there is no application. *See* Danley Decl. ¶ 5; 16 U.S.C. § 1536(g)(8) ("All meetings and records resulting from activities pursuant to this subsection [dealing with applications] shall be open to the public.").

First, Plaintiff claims that Defendant's failure to disclose documents and other information related to the March 31 meeting irreparably harms it. Pl.'s Mem. at 21. But that makes little sense because Plaintiff does not suggest that Defendant will never make the Committee's records open to the public. Nor could it. The Committee's records will be open to the public the day the Committee meets. Danley Decl. ¶ 8. Where the statute provides no deadline for disclosure, disclosure at the meeting is enough. *See Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992) (construing FACA, concluding that where "practicable," parties should have access to documents subject to disclosure "before or at the meeting").

Plaintiff is thus forced to argue that it needs this information to adequately prepare for the March 31 meeting. Pl.'s Mem. at 24. But Plaintiff has no right to participate in this meeting, which is not an evidentiary hearing to consider an application for an exemption, *see, e.g.*, 16 U.S.C. § 1536(e)(7)(A). So Plaintiff's attempt to analogize to *Beatty v. Trump*, No. 25-cv-4480, 2026 WL 712814, at *10 (D.D.C. Mar. 14, 2026), necessarily fails. The plaintiff in *Beatty* was an *ex officio* member of a board who alleged that the withholding of documents effectively deprived her of her right to participate in a board meeting. Plaintiff is not a member of the Committee. If anything, *Beatty* shows that the order Plaintiff seeks is disproportionate to its claimed procedural harms. If the Court were to find Plaintiff irreparably harmed by a failure to disclose information, the remedy would be disclosure—not an injunction against the meeting. *See id.* at *18 (ordering disclosure 24 hours before meeting).

Second, Plaintiff argues it will be irreparably harmed if its employee Mr. Hartl cannot attend the meeting in person because in-person attendance would give him a better "appreciation" for how the members of the Committee are interacting, a chance to see who else

is in attendance, and the ability to see what other materials are being reviewed. Pl.'s Mem. at 25-26. Yet Plaintiff does not deny Mr. Hartl will have the opportunity to observe the meeting, even if not in person. And most of the claimed differences between the "experience" of observing in-person and watching on a livestream could be remedied by disclosing the records reviewed by the Committee at the appropriate time. *See Doe v. S.D. Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (no irreparable harm in attending school remotely rather than in person, in part because there was no evidence attending virtually was inferior); *Lawyers' Comm.*, 265 F. Supp. 3d 54 at 70-71 (the fact that meeting would be open to public observation, and government's intent to disclose documents at the public meeting, weighed against irreparable harm). Therefore, the harm is neither great nor beyond remediation. *England*, 454 F.3d at 297-98; *Wis. Gas Co.*, 758 F.2d at 674.

Third, Plaintiff argues that its members will be irreparably harmed by the substance of the meeting—an exemption it fears may affect ESA-listed species in the Gulf. As we explained above, this purported injury would not be caused by the meeting itself. And Plaintiff has not established that any harm "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (citation omitted). Because Congress provided a vehicle to challenge the Committee's decisions, "corrective relief will be available at a later date, in the ordinary course of litigation," which "weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

The absence of irreparable harm is reinforced by *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) (no irreparable harm to party that had the option to file suit in the future "if and when" agency violated an environmental statute). The allegations there concerned, in part, the potential consequences of future agency action. But the Court reversed the grant of injunctive

29

relief over such future actions. "Until such time as the agency decides whether and how to exercise its regulatory authority, . . . the courts have no cause to intervene." *Monsanto*, 561 U.S. at 164. This principle aligns with longstanding law holding that "courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction." *McKart v. United States*, 395 U.S. 185, 194 (1969). Until the Committee actually meets and takes action, there is no action that is harming Plaintiff, much less an action the Court can review or enjoin.

### 3.  The equities and public interest weigh against granting relief.

The final two factors in the standard for preliminary and injunctive relief—the balance of equities and the public interest—"merge" in cases where the relief is sought against the United States. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In this case, they weigh against a TRO.

As an initial matter, Plaintiff asks the Court to do an extraordinary thing: to enjoin a meeting of Cabinet-level officials convening to address a matter of national security. Enjoining the Committee from doing any work would irreparably harm the United States. *Cf. Trump v. CASA, Inc.*, 606 U.S. at 861 ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers))). Here, the harm is magnified because enjoining or postponing the meeting necessarily implicates national security. Danley Decl. ¶¶ 6-7. A TRO would impede the Executive Branch's national-security functions, which were recognized by Congress when it enacted the national security exemption provision. *See* 16 U.S.C. § 1536(j); *Nat'l Treasury Emps. Union* v. *Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (per curiam).

Relief short of enjoining the meeting would problematic, too. For example, ordering the Committee to allow the public to attend in person would present a security issue. *See* Danley Decl. ¶¶ 9-10. Threats against government officials have surged recently, and those threats are magnified where multiple officials gather in one place. *Id.* ¶ 9.

The equities and public interest tip sharply against a TRO.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for TRO and dismiss this action. If the Court is inclined to enter a TRO or injunction blocking the meeting, the Court should stay its order to provide an opportunity for the Secretary to seek review in the D.C. Circuit, including an opportunity for the Solicitor General to make a decision on appeal.

Dated: March 25, 2026                    Respectfully submitted,

ADAM R.F. GUSTAFSON,
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE,
ROBERT N. STANDER,
Deputy Assistant Attorneys General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL EITEL, Acting Assistant Section Chief

 */s/ Sara M. Warren*
SARA M. WARREN, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-5785
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

***Attorneys for Defendant***

31