**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br>**378 N. Main Avenue**<br>**Tucson, AZ 85701**<br> | ) <br> ) <br> ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 1:26-cv-940-RC** |
| | ) |
| **DOUGLAS BURGUM,** *in his official capacity* | ) |
| *as Secretary of the Interior,* | ) |
| **1849 C Street, NW** | ) |
| **Washington, DC 20240** | ) |
| **Defendant.** | ) |

**DECLARATION OF CHRISTOPHER DANLEY**

Pursuant to 28 U.S.C. § 1746, I, Christopher Danley, declare as follows:

1.     I am a Senior Counselor to the Secretary of the Interior. I have been in this position since March 22, 2026. Before that, I served as a Deputy Solicitor at the Department of the Interior starting in May 2025.

2.     On March 13, 2026, the Secretary of War notified the Secretary of the Interior that the Secretary of War found it necessary for reasons of national security to exempt from the Endangered Species Act's requirements all Gulf of America oil and gas exploration and development activities associated with the Department of the Interior Bureau of Ocean Energy Management (BOEM) and Bureau of Safety and Environmental Enforcement's (BSEE) Outer Continental Shelf Oil and Gas Program.

3.     The Secretary of War requested that the Secretary of the Interior, in his capacity as Chairman of the Committee, convene a Committee meeting as soon as practicable.

4.     Later that day, the Secretary of the Interior filed with the Office of the Federal Register a notice that the Endangered Species Committee will meet on March 31, 2026,

1

regarding an Endangered Species Act exemption for oil and gas exploration, development, and production activities in the Gulf of America associated with the BOEM and BSEE's Outer Continental Shelf Oil and Gas Program. The Office of the Federal Register published that notice three days later. *See* Endangered Species Committee Meeting Announcement, 91 Fed. Reg. 12672 (Mar. 16, 2026).

5.      Because the March 31 meeting regarding an exemption is based on the Secretary of War's national security determination, *see* 16 U.S.C. § 1536(j), there is no exemption application or applicant, and the Committee will not hold an evidentiary hearing.

6.      It is critically important to convene the Committee on March 31 because the meeting deals with a matter of national security. The Committee members are high-ranking government officials who have demanding and constantly changing schedules. Each member plans to attend the meeting on March 31.

7.      Postponing or rescheduling the meeting would implicate national security. It would also create significant logistical problems because of the Committee members' demanding and unpredictable schedules.

8.      The Committee will make any Committee records open to the public the day it meets.

9.      The Committee's March 31 meeting will be open to the public through livestreaming. This is necessary and appropriate to minimize safety and security risks. Threats against government officials have surged recently.[1] Safety and security concerns are magnified

---

[1] *See, e.g.*, John Gonzalez, *Rising threats push US Capitol Police to seek historic funding*, ABC (Mar. 19, 2026) ("The U.S. Capitol Police are sounding the alarm over a sharp rise in threats against members of Congress, citing incidents both on Capitol grounds and in lawmakers' home districts."), https://abcnews4.com/news/nation-world/capitol-police-congress-threats-washington-dc-security-lawmakers-safety-federal-budget-michael-sullivan-crime-prevention-

when multiple government officials gather in the same place. Opening the meeting to the public via livestream avoids these security risks while exponentially expanding public access to an unlimited audience worldwide.

10.    A Court order requiring the Committee to allow in-person attendance at its March 31 meeting would be disruptive. It would require the Department of the Interior to significantly rework its everyday security operations both to accommodate the number of visitors and to account for the increased risk associated with several high-ranking government officials gathering in the same place. For example, although there is an auditorium in the Department of Interior's office building, it can be accessed before going through security at the building.  Using the auditorium for in-person attendance would thus create an unacceptable security risk to the high-ranking government officials who comprise the Committee.  To allow in-person attendance in the auditorium, then, the Department of Interior would need to rework its security operations, which, again, would be disruptive and require advance planning.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 25, 2026.



CHRISTOPHER DANLEY
Digitally signed by
CHRISTOPHER DANLEY
Date: 2026.03.25
10:41:29 -04'00'

Christopher Danley

---

funding-public-investigation-federal-agencies-crime-homeland-government-shutdown; Melissa Quinn & Jacob Rosen, *The price of public life: Judges and other officials doxed, swatted, threatened with death*, CBS News, (Feb. 19, 2026) (noting that "126 people [were] charged last year for making threats" "against officials working in all three branches of government "against officials working in all three branches of government"), https://www.cbsnews.com/news/threats-government-officials-prosecutions/.