**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,

    Plaintiff,

    v.

DOUGLAS BURGUM, *in his official capacity
as Secretary of the Interior, et al.*;

    Defendants.

Case No. 1:26-cv-940-RC

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

  I.  The Endangered Species Act ....................................................................................... 1

      A.  ESA Section 7 ...................................................................................................... 1

      B.  The Committee ..................................................................................................... 3

      C.  Exemptions ........................................................................................................... 4

  II.  Factual and Procedural Background ........................................................................... 5

      A.  ESA Section 7 consultation on oil and gas development in the Gulf of America .......... 5

      B.  Announcement of Meeting of the Committee ..................................................... 6

      C.  Plaintiff Files this Lawsuit .................................................................................. 7

      D.  Meeting of the Committee and Exemption Order .............................................. 7

      E.  Plaintiff Amends Its Complaint .......................................................................... 7

      F.  Other Pending Actions ........................................................................................ 8

LEGAL STANDARDS ...................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

  I.  Judicial review of Plaintiff's claims is available exclusively in the courts of appeals. ......... 9

      A.  Congress designed the ESA exemption process to culminate in one final agency action. .................................................................................................... 10

          1.  The 1978 ESA Amendments create an exemption process that culminates in a single, final agency action. ............................................................. 10

          2.  The Committee granted an exemption under Section 7(h). ................................ 12

      B.  Judicial review of the grant of an exemption is available only in the courts of appeals. ............................................................................................................ 13

      C.  The APA does not provide an alternative avenue for Plaintiff to bring its claims in district court ............................................................................................. 18

  II.  Plaintiff cannot establish any element of a Mandamus Act claim. ..................................... 20

CONCLUSION ................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Am. Hosp. Ass'n v. Burwell,*
  812 F.3d 183 (D.C. Cir. 2016)........................................................................................ 20

*Am. Petroleum Inst. v. S.E.C.,*
  714 F.3d 1329 (D.C. Cir. 2013)...................................................................................... 13

*Arch Coal, Inc. v. Acosta,*
  888 F.3d 493 (D.C. Cir. 2018)................................................................................... 14, 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2008)......................................................................................................... 22

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................................... 22

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984)......................................................................................................... 18

*Bombardier, Inc. v. U.S. Dep't of Lab.,*
  145 F. Supp. 3d 21 (D.D.C. 2015) .................................................................................. 14

*Brown v. G.S.A.,*
  425 U.S. 820 (1976).................................................................................................... 15, 18

*City of Rancho Palos Verdes, Cal. v. Abrams,*
  544 U.S. 113 (2005)......................................................................................................... 18

*City of Rochester v. Bond,*
  603 F.2d 927 (D.C. Cir. 1979)................................................................................... 19, 20

*City of Tacoma v. Taxpayers of Tacoma,*
  357 U.S. 320 (1958)......................................................................................................... 13

*Connecticut v. U.S. Dep't of the Interior,*
  344 F. Supp. 3d 279 (D.D.C. 2018) .................................................................................. 9

*Ctr. for Biological Diversity v. U.S. E.P.A.,*
  106 F. Supp. 3d 95 (D.D.C. 2015) .................................................................................. 16

*Eagle-Picher Indus., Inc. v. U.S. E.P.A.,*
  759 F.2d 905 (D.C. Cir. 1985)......................................................................................... 16

iii

*EC Term of Years Tr. v. United States*,
  550 U.S. 429 (2007) ................................................................................................ 18, 19

*Ecee, Inc. v. F.E.R.C.*,
  611 F.2d 554 (5th Cir. 1980) ......................................................................................... 19

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ......................................................................................... 9

*Hinck v. United States*,
  550 U.S. 501 (2007) ................................................................................................ 16, 18

*Kokkonen v. Guardian Life Insurance Co.*,
  511 U.S. 375 (1994) .......................................................................................................... 8

*Loughlin v. United States*,
  393 F.3d 155 (D.C. Cir. 2004) ......................................................................................... 8

*Louisiana v. NMFS*,
  817 F. Supp. 3d 390 (W.D. La. 2026) ............................................................................ 5

*Lovitky v. Trump*,
  949 F.3d 753 (D.C. Cir. 2020) ....................................................................................... 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 8

*Muthana v. Pompeo*,
  985 F.3d 893 (D.C. Cir. 2021) ................................................................................. 20, 21

*Nader v. Volpe*,
  466 F.2d 261 (D.C. Cir. 1972) ....................................................................................... 15

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ........................................................................................................ 14

*Nat'l Sec. Couns. v. C.I.A.*,
  898 F. Supp. 2d 233 (D.D.C. 2012) .............................................................................. 22

*Neville v Burrows*,
  No. 22-3246 (RC), 2024 WL 578986 (D.D.C. Feb. 13, 2024) ................................... 8

*Power v. Barnhart*,
  292 F.3d 781 (D.C. Cir. 2002) ....................................................................................... 22

*Russello v. United States*,
   464 U.S. 16 (1983)........................................................................................................11

*Sierra Club v. NMFS*,
   797 F. Supp. 3d 440 (D. Md. 2024) .............................................................................. 5

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987)..................................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)......................................................................................................... 8

*\*Telecomms. Rsch. & Action Ctr. v. F.C.C.*,
   750 F.2d 70 (D.C. Cir. 1984)........................................................................ 14, 15, 16, 19

*Wagner v. Fed. Election Comm'n*,
   717 F.3d 1007 (D.C. Cir. 2013)................................................................................... 14

**Statutes**

5 U.S.C. §§ 701-06 ............................................................................................................ 19

5 U.S.C. § 701(a)(1)........................................................................................................... 18

5 U.S.C. § 703 .................................................................................................................... 20

5 U.S.C. § 704 ............................................................................................................. 15, 19

5 U.S.C. § 7123 .................................................................................................................. 19

15 U.S.C. § 3416................................................................................................................. 19

16 U.S.C. § 1532(6) ............................................................................................................. 1

16 U.S.C. § 1532(19) ........................................................................................................... 2

16 U.S.C. § 1532(20) ........................................................................................................... 2

16 U.S.C. § 1533(a)(1)......................................................................................................... 1

16 U.S.C. § 1533(d) ............................................................................................................. 3

16 U.S.C. § 1536(a)(2)............................................................................................ 2, 3, 4, 12

16 U.S.C. § 1536(a)(2)-(3)................................................................................................... 2

16 U.S.C. § 1536(b)(3)(A).................................................................................................... 2

16 U.S.C. § 1536(b)(4) .................................................................................................... 2, 3

16 U.S.C. § 1536(e) ............................................................................................................. 3

16 U.S.C. § 1536(e)(1)-(2)................................................................................................. 10

16 U.S.C. § 1536(e)(2)....................................................................................................... 12

16 U.S.C. § 1536(e)(3)(A)-(F) ............................................................................................ 3

16 U.S.C. § 1536(e)(3)(G) .................................................................................................. 3

16 U.S.C. § 1536(e)(5)(A) ............................................................................................ 4, 10

16 U.S.C. § 1536(e)(5)(C) .................................................................................................. 3

16 U.S.C. § 1536(e)(5)(D) .................................................................................................. 4

16 U.S.C. § 1536(e)(7)(A) ............................................................................................ 3, 10

16 U.S.C. § 1536(g)(2)(B) .................................................................................................. 4

16 U.S.C. § 1536(g)(3)-(5) ................................................................................................. 4

16 U.S.C. § 1536(h) ............................................................................................................ 3

16 U.S.C. § 1536(h)(1) ......................................................................................... 4, 10, 11, 12

16 U.S.C. § 1536(j) .................................................................................................. 4, 12, 13

16 U.S.C. § 1536(*l*) ........................................................................................................ 12

16 U.S.C. § 1536(*l*)(1) ............................................................................................... 4, 10

16 U.S.C. § 1536(m) ..................................................................................................... 11, 12

16 U.S.C. § 1536(n) ................................................................................................... passim

16 U.S.C. § 1536(*o*)(1) ........................................................................................... 3, 4, 12

16 U.S.C. § 1536(*o*)(2) ................................................................................................ 2, 3

16 U.S.C. § 1538(a)(1)(B) .................................................................................................. 2

16 U.S.C. § 1539 ................................................................................................................. 2

16 U.S.C. § 1540 ................................................................................................................. 3

16 U.S.C. § 1540(c) ........................................................................................................... 11

16 U.S.C. § 1540(g) ........................................................................................................... 11

28 U.S.C. § 1331 ............................................................................................................... 18

28 U.S.C. § 1361 ........................................................................................................... 7, 20

28 U.S.C. § 2112 ............................................................................................................... 19

28 U.S.C. § 2112(a) ..................................................................................................... 17, 19

28 U.S.C. § 2401(a) ..................................................................................................... 16, 19

33 U.S.C. § 1369(b) .......................................................................................................... 14

42 U.S.C. § 1983 ............................................................................................................... 18

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 8
Fed. R. Civ. P. 12(b)(6) ................................................................................................ 8

## Regulations

50 C.F.R. § 402.02 ...................................................................................................... 2
50 C.F.R. § 402.13(b) ................................................................................................... 2
50 C.F.R. § 402.14(a) ................................................................................................... 2
50 C.F.R. § 402.14(a)-(b) ............................................................................................. 2
50 C.F.R. § 402.14(h) ................................................................................................... 2
50 C.F.R. § 402.14(h)(1)(iv)(A) .................................................................................. 2
50 C.F.R. § 402.14(h)(2) .............................................................................................. 2
50 C.F.R. § 402.14(i) .................................................................................................... 3
50 C.F.R. § 451.02(b) ................................................................................................... 4
50 C.F.R. § 453.03(b) ............................................................................................. 4, 10
50 C.F.R. § 453.03(d) ................................................................................................... 4
50 C.F.R. § 453.05(e) ................................................................................................... 4

## Federal Register

91 Fed. Reg. 12672 (Mar. 16, 2026) ..................................................................... 6, 21
91 Fed. Reg. 16966 (Apr. 3, 2026) .................................................................... 6, 7, 12

## Legislative Materials

S. Rep. No. 95-874 (1978) ......................................................................................... 10

**INTRODUCTION**

On March 31, 2026, the Endangered Species Committee ("Committee") granted an exemption from the requirements of the Endangered Species Act ("ESA") for oil and gas exploration, development, and production activities in the Gulf of America. The ESA contains a statutory review provision requiring that all challenges to Committee action be brought in the courts of appeals. 16 U.S.C. § 1536(n). Rather than follow Congress' direction, Plaintiff instead amended its complaint (after unsuccessfully trying to block the meeting where the Committee granted the exemption) in this Court, after this Court has already expressed doubt that it has jurisdiction over this case. *See* Dkt. No. 17. In doing so, Plaintiff disassembled the claims it could have raised in a petition for review and attempts to assert them here, repackaged as standalone Administrative Procedure Act ("APA") and Mandamus Act claims.

Plaintiff's efforts to manufacture jurisdiction in this Court fail at every turn. ESA Section 7(n) provides the sole vehicle for judicial review of Plaintiff's claims, precluding other forms of relief, and review is available only in the courts of appeals. There is no cause of action under the APA where, as here, another statute precludes review. Plaintiff must raise its claims challenging the Committee's order in a petition for review, or not at all.

The Court should dismiss Plaintiff's claims in their entirety for lack of subject matter jurisdiction based on the exclusive review provision in Section 7(n).

**BACKGROUND**

I.    **The Endangered Species Act**

A.    **ESA Section 7**

The ESA directs the Secretaries of the Interior and Commerce to determine which species to list as "endangered" or "threatened." 16 U.S.C. § 1533(a)(1); *id.* § 1532(6) (defining

"endangered species"), (20) (defining "threatened species"). Listed species are entitled to certain protections under the Act. As relevant here, each federal agency must "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [protected species' critical] habitat." *Id.* § 1536(a)(2).

To carry out this mandate, the federal action agency may need to consult with the U.S. Fish and Wildlife Service ("FWS") and/or the National Marine Fisheries Service ("NMFS"). *Id.* § 1536(a)(2)–(3); 50 C.F.R. § 402.14(a). Each is the "consulting agency." If the proposed action is likely to adversely affect listed species or critical habitat, formal consultation is required. 50 C.F.R. §§ 402.13(b), 402.14(a)-(b). Formal consultation culminates in the issuance of a "biological opinion" ("BiOp"), in which the consulting agency examines the proposed action's anticipated effects on listed species and critical habitat and opines on whether the action is likely to jeopardize the species' continued existence or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(h). If the consulting agency issues a "jeopardy" finding, the BiOp must identify "reasonable and prudent alternatives" to the proposed action, if any exist. 50 C.F.R. § 402.14(h)(1)(iv)(A), (h)(2).

Whether or not the proposed action is likely to jeopardize a species, it may cause "incidental take." *Id.* § 402.02 (defining "incidental take" as "takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant").[1] In such cases, the consulting agency issues an Incidental Take Statement ("ITS")

---

[1] The ESA prohibits "any person" from engaging in actions collectively referred to as "take"—including harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting—of any endangered species without a permit or other exemption. 16 U.S.C. §§ 1532(19), 1538(a)(1)(B), 1536(b)(4), 1536(*o*)(2), 1539. The take prohibition can be

2

specifying the extent of anticipated take, identifying "reasonable and prudent measures" to minimize impacts, and setting forth terms and conditions for their implementation. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). Compliance with the ITS provides a safe harbor from civil and criminal liability for incidental take. 16 U.S.C. § 1536(*o*)(2).

### B.    The Committee

Congress recognized that there are circumstances where agency actions should be exempt from the ESA's requirements. It thus created the Endangered Species Committee and gave it authority to exempt an agency action from those requirements. *See id.* § 1536(e), (h); *see also id*. § 1536(a)(2) (ESA consultation requirements apply only in the absence of an exemption); *id*. § 1536(*o*)(1) (ESA take prohibitions do not apply following a Committee exemption).

The Committee consists of six permanent members: the Secretary of the Interior (who serves as chair), the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisors, the Administrator of the Environmental Protection Agency, and the Administrator of the National Oceanic and Atmospheric Administration. *Id.* § 1536(e)(3)(A)-(F). In certain circumstances, the President appoints one person from each affected State. *Id.* § 1536(e)(3)(G).

The Committee is empowered to "sit and act at such times and places . . . as the Committee deems advisable" "for the purpose of carrying out its duties" under the statute. *Id.* § 1536(e)(7)(A). The Committee is required to meet at the call of the Secretary of the Interior in his role as Chairman or at the call of five Committee members. *Id.* § 1536(e)(5)(C). Five

---

extended to threatened species. *Id.* § 1533(d). Civil and criminal penalties attach to violations of the take prohibition. *Id.* § 1540.

members constitute a quorum. *Id.* § 1536(e)(5)(A). When the Committee has convened, its meetings and records must be open to the public. *Id.* § 1536(e)(5)(D); 50 C.F.R. § 453.05(e).

### C.    Exemptions

An applicant may apply in writing for an exemption after the consulting agency makes specific findings. *See* 50 C.F.R. § 451.02(b). An application triggers a process that involves a Federal Register notice summarizing the application, an administrative hearing, a written report, and, generally, a Committee decision that makes specific findings. 16 U.S.C. § 1536(g)(2)(B), (g)(3)–(5), (h)(1).

Alternatively, the ESA provides: "Notwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j); *see also* 50 C.F.R. § 453.03(d).[2] When the Secretary of War makes this finding, the application procedures do not apply. *See* 16 U.S.C. § 1536(j).

When the Committee grants an exemption, the agency action is exempt from the ESA's requirements. *See* 16 U.S.C. § 1536(a)(2), (*o*)(1). The Committee's final order is published in the Federal Register. *Id*. § 1536(*l*)(1); 50 C.F.R. § 453.03(b).

The Committee's final determination constitutes final agency action under the APA. 16 U.S.C. § 1536(h)(1). Jurisdiction to review the decision lies exclusively in the U.S. Court of Appeals for the circuit in which the agency action is being carried out. *Id*. § 1536(n).

---

[2] The Secretary of War may also make such a finding for an agency action that is the subject of an exemption application.

II.      **Factual and Procedural Background**

A.      **ESA Section 7 consultation on oil and gas development in the Gulf of America**

Federal agencies have consulted with NMFS regarding oil and gas activities in the Gulf of America since the late 1970s, initially on a lease-sale-by-lease-sale basis. *See* NMFS Biological and Conference Opinion on BOEM and BSEE's Oil and Gas Program Activities in the Gulf of America, at 7 (May 20, 2025), *available* at https://www.fisheries.noaa.gov/s3//2025-05/BOEM-BSEE-Gulf-of-America-Oil-and-Gas-Program-BiOp-5.20.25.pdf. In the 2000s, NMFS began consulting with action agencies on certain activities programmatically, though individual lease sale consultations continued in parallel. *See id*.

In 2010, NMFS and the two agencies within the Department of the Interior that oversee the Gulf's oil and gas activities, the Bureau of Ocean Energy Management ("BOEM") and Bureau of Safety and Environmental Enforcement ("BSEE"), agreed to pursue a single programmatic, Gulf-wide ESA consultation. That consultation covers oil and gas exploration, development, and production activities in the Gulf of America associated with BOEM and BSEE's Outer Continental Shelf oil and gas program. *Id.* at 6, 10. After years of interagency review, NMFS issued a final programmatic BiOp in March 2020. *Id.* at 8-9. NMFS issued the current biological opinion for oil and gas activities in the Gulf of America in May 2025.[3]

---

[3] NMFS issued the current BiOp after a district court vacated the 2020 BiOp and deferred the vacatur date. *See Sierra Club v. NMFS*, 797 F. Supp. 3d 440 (D. Md. 2024), *as amended*, No. 8:20-cv-3060, 2024 WL 6817999 (D. Md. Oct. 21, 2024). The current BiOp was challenged in two lawsuits. *See* No. 8:25-cv-1627 (D. Md.); No. 2:25-cv-691 (W.D. La.). One case went to decision, and the court concluded that NMFS's jeopardy determination for the Rice's whale, and, therefore, the BiOp's reasonable and prudent alternative, were flawed. *Louisiana v. NMFS*, 817 F. Supp. 3d 390 (W.D. La. 2026). The court remanded the 2025 BiOp to the agency but, on the government's motion for relief from the remedy order in light of the Committee's exemption, the court modified the order to remove the requirement regarding remand. W.D. La. No. 2:25-cv-691, Dkt. Nos. 63, 64. In the case pending in the District of Maryland, on April 29,

Separately, FWS issued its own biological opinion on BOEM and BSEE's Gulf oil and gas program in April 2018. The agencies later reinitiated consultation to consider new information. In March 2025, FWS confirmed that the new information did not change the conclusions in its 2018 biological opinion.[4]

### B.    Announcement of Meeting of the Committee

On March 13, 2026, the Secretary of War notified the Secretary of the Interior that he found it necessary for reasons of national security to exempt from the ESA's requirements all Gulf of America oil and gas exploration and development activities associated with BOEM and BSEE's Outer Continental Shelf oil and gas program. *See* Endangered Species Committee Decision and Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026) ("Exemption Order"); *see also* Am. Compl. (Dkt. No. 18) ¶ 79. The Secretary of War requested that the Secretary of the Interior, in his capacity as Chairman of the Committee, convene a Committee meeting as soon as practicable. Exemption Order, 91 Fed. Reg. at 16966.

Later that day, the Secretary of the Interior filed with the Office of the Federal Register a notice announcing that the Committee would meet on March 31, 2026, regarding an ESA exemption for Gulf of America oil and gas activities. *See* Endangered Species Committee Meeting Announcement, 91 Fed. Reg. 12672 (Mar. 16, 2026) ("Committee Meeting Announcement"). The notice provided that the meeting would be open to the public via livestream and would be recorded so the public could view the meeting at a later time. *Id.*

---

2026, NMFS moved to dismiss the case as moot in light of the Committee's exemption. D. Md. No. 8:25-cv-1627, Dkt. No. 99.

[4] Both of FWS's decisions are being challenged in litigation. *See Ctr. for Biological Diversity v. Burgum*, No. 1:24-cv-990-DLF (D.D.C.). On April 23, 2026, FWS moved to dismiss the case as moot in light of the Committee's exemption. D.D.C. No. 1:24-cv-990, Dkt. No. 48.

### C.    Plaintiff Files this Lawsuit

On March 18, 2026, Plaintiff filed its initial complaint in this action, alleging that the Committee Chairman unlawfully withheld information and access to the March 31, 2026 meeting, that the Committee was convening in violation of the APA, and that the Committee had withheld documents. Dkt. No. 1. The next day, Plaintiff filed a motion for a temporary restraining order, seeking an order barring the Committee from meeting. Dkt. No. 9. After briefing and a hearing, the Court denied the motion for a temporary restraining order, concluding that it likely lacked subject matter jurisdiction because Section 7(n) channels review to the courts of appeals, and that Plaintiff had failed to challenge a final agency action. *See* Dkt. No. 17.

### D.    Meeting of the Committee and Exemption Order

On March 31, 2026, the Committee members convened and unanimously voted to grant the exemption for oil and gas activities in the Gulf. *See* Exemption Order, 91 Fed. Reg. at 16966-67. The order granting the exemption was published in the Federal Register on April 3, 2026. *Id.*

### E.    Plaintiff Amends Its Complaint

Just a few hours after the March 31, 2026 meeting of the Committee, Plaintiff amended its complaint. Plaintiff now raises four claims: (1) an APA challenge to the Committee's grant of an exemption, based on alleged procedural defects in the convening of the Committee; (2) an APA claim alleging that the Committee held an unlawful closed session and withheld records; (3) a claim under the Mandamus Act, 28 U.S.C. § 1361, seeking "information, documents, and meetings" of the Committee; and (4) an APA challenge to the Secretary of War's national security determination. Am. Compl. ¶¶ 87-106.

**F.**      **Other Pending Actions**

There are currently eight pending challenges involving the Committee's grant of an exemption for oil and gas activities. Three cases are pending in this Court, including this case and two related cases, *Natural Resources Defense Council v. Burgum et al.*, D.D.C. No. 1:26-cv-1116, and *Healthy Gulf et al. v. Burgum et al.*, D.D.C. No. 1:26-cv-1118. In addition, there are four petitions presently pending in the Fifth Circuit Court of Appeals and one petition pending in the Eleventh Circuit Court of Appeals. *See* Consolidated 5th Cir. No. 26-60240, *Am. Energy Ass'n et al. v. Burgum, et al.* (four consolidated petitions); *W&T Offshore, Inc. v. Sec'y, U.S. Dep't of the Interior et al.*, 11th Cir. No. 26-11211.

## LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994), and thus the inquiry into "subject-matter jurisdiction 'is, of necessity, the first issue for an Article III court.'" *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004) (citation omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (noting that jurisdiction must "be established as a threshold matter"). It is a plaintiff's burden to establish that the court has jurisdiction in the first instance. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The factual allegations in the complaint bear closer scrutiny on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction than on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Neville v Burrows*, No. 22-3246 (RC), 2024 WL 578986, at *5 (D.D.C. Feb. 13, 2024) (Contreras, J.). In addition, a court may consider

materials outside the pleadings to determine whether it has jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197-98 (D.C. Cir. 1992).[5]

**ARGUMENT**

Congress carefully designed the exemption process in Section 7 to culminate in a single decision—an exemption under § 1536(h)—that is subject to judicial review exclusively in the courts of appeals. *See* 16 U.S.C. § 1536(n). Rather than press its challenge in the courts of appeals, Plaintiff seeks to disaggregate that single decision into a series of freestanding claims raised in the district court. This attempt fails. The Court should dismiss this case.

**I.      Judicial review of Plaintiff's claims is available exclusively in the courts of appeals.**

Under the statute, the grant or denial of an exemption is the only event that triggers judicial review, providing that any person may seek judicial review under the APA "of any decision of the Endangered Species Committee under subsection (h) in the United States Court of Appeals for . . . any circuit wherein the agency action concerned will be, or is being, carried out . . . ." 16 U.S.C. § 1536(n). The Committee here granted an exemption under subsection (h), which means that judicial review may be had only in the court of appeals pursuant to subsection (n).

---

[5] Defendants' motion to dismiss raises legal arguments that do not depend on an administrative record and, as such, fall outside the scope of Local Civil Rule 7(n). *See* Minute Order, *Safari Club Int'l v. Jewell,* No. 14-cv-670 (D.D.C. June 23, 2014) ("LCvR 7(n)(1) was amended for the convenience of the Court and addresses cases at the summary judgment stage . . . ."). But even if the rule applies here, Defendants request leave from this requirement because "the administrative record is not necessary for [the court's] decision." *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

9

> **A.    Congress designed the ESA exemption process to culminate in one final agency action.**
>
> > **1.    The 1978 ESA Amendments create an exemption process that culminates in a single, final agency action.**

After the ESA was enacted, conflicts arose between the ESA's "mandate to protect and manage endangered and threatened species and other legitimate national goals and priorities such as providing energy, economic development and other benefits to the American people." S. Rep. No. 95-874, at 2 (1978). Congress therefore amended the ESA in 1978 to establish a committee with the power to grant exemptions for federal actions from the requirements of the ESA. *Id.* at 1-2.

Consistent with that legislative purpose, the 1978 amendments established the Committee, whose role is to consider whether to grant or deny exemptions from the requirements of the ESA, as provided by Section 7(h). 16 U.S.C. § 1536(e)(1)-(2), (h)(1). Section 7(e) enumerates the powers of the Committee "for the purpose of carrying out its duties under this section," namely, its duty to determine whether to grant an exemption under Section 7(h). *Id.* § 1536(e)(1)-(2), (e)(7)(A).

When the Committee grants or denies an exemption, it does so by vote with a quorum of its members present, and five votes are required to grant an exemption. *Id.* § 1536(e)(5)(A), (h)(1). The Committee's decision constitutes final agency action for purposes of judicial review. *Id.* § 1536(h)(1). The Committee is required to document its findings in a written decision and, if it grants an exemption, it must also issue an order granting the exemption. *Id.* § 1536(*l*)(1). Its decision and order must be published in the Federal Register. 50 C.F.R. § 453.03(b).

Congress has therefore provided a clear statutory endpoint for the exemption process: the Committee must vote, and, if it grants the exemption, it must issue an order along with its written

10

decision. Not only is it clear from the structure of the statute that Congress intended the Committee's decision to be the final agency action, Congress left no ambiguity as to what constitutes a final agency action. Section 7(h)(1) provides, "[a]ny final determination by the Committee under this subsection shall be considered final agency action for purposes of chapter 7 of Title 5 [of the United States Code]." 16 U.S.C. § 1536(h)(1). Judicial review of that final agency action lies exclusively in the court of appeals for any circuit in which the agency action is being, or will be, carried out. *Id.* § 1536(h)(1), (n). A person seeking judicial review of a final Committee determination must file the petition within 90 days of issuance of the Committee's decision. *Id.* § 1536(n).

No provision of the ESA disturbs the conclusion that Congress intended to create a single avenue for judicial review of a Committee decision regarding an exemption. Congress drafted the 1978 Amendments to the ESA against the backdrop of the existing ESA, which included express provisions for judicial review in the district courts. *See* 16 U.S.C. § 1540(c), (g). Yet, unlike with violations of the ESA, Congress made no provision for review of a Committee decision in the district courts under the ESA citizen-suit provision (or any other cause of action). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)). Indeed, Section 7 expressly provides that the 60-day notice requirement for citizen suits is inapplicable to challenges to the final determination of the Committee, further demonstrating that Congress intended a single avenue for review of Committee determinations within the abbreviated 90-day limitations period provided by Section 7(n). 16 U.S.C. §§ 1536(m), (n), 1540(g).

The national security provision in Section 7(j) does not change the fact that Section 7(h) is the source of the exemption. Section 7(j) states: "Notwithstanding any other provision of this chapter, the *Committee shall grant an exemption* for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j) (emphasis added). The Committee, not the Secretary of War, grants the exemption. Also, Section 7(j) is nested within the exemption provisions and represents a predicate step to a Committee exemption. *See id.* ("the Committee shall grant an exemption" based on the Secretary of War's findings). The text of Section 7 consistently refers to only a single exemption: the exemption in Section 7(h). *See* 16 U.S.C. § 1536(a)(2), (e)(2), (h)(1), (*l*), (m), (*o*)(1). Congress did not change the meaning of that term *sub silentio* in Section 7(j).

The plain text, purpose, and structure of Section 7 make clear that the work of the Committee culminates in a single, final agency action—a determination to grant or deny an exemption. 16 U.S.C. § 1536(h)(1).

### 2.    The Committee granted an exemption under Section 7(h).

The Committee's order dated March 31, 2026, granted an exemption under Section 7(h). The order provides: "[B]ased on the Secretary of War's National Security Findings, the Committee grants pursuant to section 7(h) an exemption from the requirements of the Endangered Species Act for Gulf of America Oil and Gas Activities." Exemption Order, 91 Fed. Reg. at 16966 (emphasis added); *see also id.* at 16966-67 (expressly stating elsewhere that the exemption was made under Section 7(h)). By its own express terms, the Committee's order is an exemption under Section 7(h).

The fact that the Secretary of War's national security determination prompted the Committee to convene does not change the fact that the Committee granted an exemption

12

pursuant to Section 7(h). Section 7(j) provides that the Committee "shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1536(j). The national security determination is a predicate to the Committee's grant of the exemption under Section 7(h)—not the source of the exemption itself. The only exemption in Section 7 is the exemption in Section 7(h).

Because this case involves a Committee exemption under Section 7(h), Plaintiff cannot evade the requirements of Section 7(n), which requires all actions challenging the exemption to be brought in the courts of appeals.

> **B.      Judicial review of the grant of an exemption is available only in the courts of appeals.**

Plaintiff challenges the Committee's exemption under Section 7(h). And Section 7(n) creates a single path to judicial review of the Committee's decision: a petition for review in the courts of appeals filed within 90 days of issuance of the Committee's determination to grant or deny an exemption. 16 U.S.C. § 1536(n). Thus, Plaintiff may only obtain review in the courts of appeals.

Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). Although "the normal default rule is that persons seeking review of agency action go first to district court," that default rule is superseded "when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Am. Petroleum Inst. v. S.E.C.*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (citations omitted).

Section 7(n) provides that "[a]ny person . . . may obtain judicial review . . . of any decision of the [Committee] under subsection (h)" by filing a petition in the appropriate court of

13

appeals within 90 days of the decision. 16 U.S.C. § 1536(n). A statute providing that a plaintiff "may" obtain judicial review in the courts of appeals vests jurisdiction exclusively in the courts of appeals. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 114 (2018) (statute providing that review "may be had" in the courts of appeals (33 U.S.C. § 1369(b)) vested jurisdiction "directly and exclusively in the federal courts of appeals"); *Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1012 & n.5 (D.C. Cir. 2013) (citing six other examples and explaining the background principle that courts interpret jurisdictional statutes using "may" "to confer exclusive jurisdiction" in the courts of appeals).

As the D.C. Circuit has explained, "[i]t is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Rsch. & Action Ctr. [("TRAC")] v. F.C.C.*, 750 F.2d 70, 77 (D.C. Cir. 1984) (citations omitted); *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018) ("If a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review.") (quotation omitted); *Bombardier, Inc. v. U.S. Dep't of Lab.*, 145 F. Supp. 3d 21, 31 (D.D.C. 2015) (Contreras, J.) ("special statutory review scheme" is "the exclusive means of obtaining judicial review"). Thus, Congress provided for judicial review of a written decision and order granting an exemption—including the Exemption Order—exclusively in the court of appeals.

Plaintiff here expressly challenges the Committee's exemption, arguing it is unlawful for various procedural reasons. Am. Compl. ¶¶ 88-97. But, as noted, the ESA explicitly limits review of such claims to properly filed petitions in the courts of appeals. Plaintiff cannot avoid this jurisdictional bar by raising procedural challenges to the Committee's decision. Plaintiff's

14

choice to raise its claim as a procedural challenge does not change the nature of the Committee's decision and does not overcome Section 7(n)'s clear mandate that any and all claims challenging exemptions be heard in the courts of appeals, not the district courts. *See Brown v. G.S.A.*, 425 U.S. 820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.").

Nor does Plaintiff's focus on preliminary or intermediate steps in the Committee's decision dispense with Section 7(n)'s bar on district court litigation. That provision incorporates by reference the judicial review provisions in the APA. 16 U.S.C. § 1536(n). The APA, in turn, provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Thus, under APA Section 704, Plaintiff's claims about procedural and intermediate agency action— including Plaintiff's claims about whether the application procedures in Section 7(g) were followed, its claims about access to documents and meetings, and its challenge to intermediate administrative action such as the Secretary of War's national security exemption—may be raised only on a petition for review of the final agency action. *See Nader v. Volpe*, 466 F.2d 261, 269-70 (D.C. Cir. 1972) (an agency's refusal to accede to a party's demands for production of information in pending proceedings is not subject to immediate judicial review in the district court but must, instead, be raised with its petition for review in the courts of appeals). Similarly, when a statute "commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Sierra Club v. Thomas*, 828 F.2d 783, 787 (D.C. Cir. 1987) (quoting *TRAC*, 750 F.2d at 75), *partly abrogated by statute as recognized by Mexichem Specialty Resins, Inc. v.*

15

*E.P.A.*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015) (addressing jurisdictional changes to 1990 Clean Air Act amendments)). Thus, a claim challenging procedural or intermediate actions that will culminate in a final agency action reviewable only in the courts of appeals may only be raised in the courts of appeals.

Allowing piecemeal review of claims challenging Committee action would frustrate Congress' design. When Congress provides for exclusive review of an action in the courts of appeals, as it has done with Section 7(n), it does so to provide for speedy resolution and finality, and to avoid duplicative and potentially conflicting review. *See TRAC*, 750 F.2d at 78 (exclusive jurisdiction in the courts of appeals eliminates duplicative and potentially conflicting review); *Eagle-Picher Indus., Inc. v. U.S. E.P.A.*, 759 F.2d 905, 911 (D.C. Cir. 1985) (Congress sets time limits on petitions for review to "impose statutory finality on agency orders, a choice [the courts] may not second-guess.") (citation & footnote omitted); *Ctr. for Biological Diversity v. U.S. E.P.A.*, 106 F. Supp. 3d 95, 101 (D.D.C. 2015) (exclusive review in the appellate courts is intended to ensure speedy resolution and avoid unnecessary delay in the district courts), *aff'd*, 861 F.3d 174 (D.C. Cir. 2017). Consistent with that intent, Congress usually applies rigorous limitations periods to petitions for review, as opposed to the default six-year limitations period typically applied to APA claims in the district court under 28 U.S.C. § 2401(a). A plaintiff cannot "effortlessly evade" Congress' intent for circuit review and the attendant 90-day limitations period by raising general APA claims in the district courts. *See Hinck v. United States*, 550 U.S. 501, 506 (2007) (quotation omitted).

It would be inconsistent with congressional intent for Plaintiff to parcel off claims about the exemption and raise them at the time and in the forum of its own choosing. For example, it would lead to incongruous results if Plaintiff's procedural claims about the exemption could be

16

raised in this Court—perhaps now, perhaps five years from now—long after Plaintiff would have had to raise those claims, as well as any claims about the substance of the exemption, in the courts of appeals under Section 7(n).

Also, allowing Plaintiff to litigate procedural claims and its claim challenging the national security determination (which is not even reviewable) in a piecemeal fashion could lead to inconsistent judicial review, with this court potentially reaching a different result than a circuit court. If Plaintiff challenged the Secretary of War's national security determination in this Court, and another plaintiff challenged the Committee's order in the courts of appeals, the courts could reach different results and disturb Congress' preference for finality and consistent review. This scenario is no mere hypothetical. At present, there are five petitions for review pending in the courts of appeals challenging the Committee's exemption. Congress provided in Section 7(n) that those petitions must be consolidated for review in a single court. *See* 16 U.S.C. § 1536(n) (directing the Committee to file the administrative record "as provided in section 2112 of Title 28"); 28 U.S.C. § 2112(a) (providing mandatory procedures for the consolidation of petitions for review filed in multiple circuits). It would defy Congress' intent for speedy review, finality, and consistency of judicial review in enacting Section 7(n) to have one court of appeals adjudicate the final agency action, while allowing the various district courts to entertain substantially the same challenges in a piecemeal fashion.

Thus, Plaintiff's claims challenging the procedural steps it claims the Committee should have taken on the path to the exemption, including the alleged withholding of documents and meetings, and its claims challenging the Secretary of War's national security determination, must be raised in a properly filed petition for review in the courts of appeals.

17

C.      **The APA does not provide an alternative avenue for Plaintiff to bring its claims in district court.**

General APA remedies in district court are not available where another, more specific, statute precludes those remedies. 5 U.S.C. § 701(a)(1); *see Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (noting the APA "withdraws [the] cause of action [under the APA] to the extent the relevant statute 'precludes judicial review'" (citing § 701(a)(1)). Here, Section 7(n) precludes general review under the APA—foreclosing Plaintiff's reliance on general federal question jurisdiction under 28 U.S.C. § 1331 and the APA to bring its challenge to this Court.

The Supreme Court has repeatedly held that "a precisely drawn, detailed statute preempts more general remedies" such as the APA. *See EC Term of Years Tr. v. United States*, 550 U.S. 429, 433–34 (2007) (citing *Brown*, 425 U.S. at 834); *Block*, 467 U.S. at 345-48 (general APA review precluded by more specific statutory review provision). Indicia of Congressional intent for a "detailed statute" to preempt more general remedies include a specific (and often more rigorous) limitations period, provisions naming a forum for review, and special provisions on the manner in which the case is to be decided. *See Hinck*, 550 U.S. at 506 (one-sentence provision providing a forum for adjudication, limitations period, standard of review, and authorization for judicial relief preempted general remedies); *EC Term of Years Tr.*, 550 U.S. at 434 (explaining that preemption of general remedies is evident where "resort to a general remedy would effectively extend the limitations period for the specific one"); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 122-25 (2005) (the Telecommunications Act preempted the general remedy of 42 U.S.C. § 1983 because the Act "limits relief in ways that § 1983 does not," including with a more specific 30-day limitations period and requirements that the case be heard and decided on an expedited basis). Such provisions demonstrate Congress' preference for finality and avoidance of duplicative or conflicting judicial review.

18

Section 7(n) contains indicia that Congress intended to preclude review via general remedies in the district courts because it contains (1) a strict 90-day limitations period (contrasted with the default six-year limitations period typically applied to APA claims in the district court under 28 U.S.C. § 2401(a)), (2) specific provisions channeling judicial review to the courts of appeals, rather than the district courts, (3) instructions on the standard of review, and (4) specific provisions for how the Committee may be served and may be represented by counsel. Time limits, in particular, are evidence of congressional preference for exclusive review in the courts of appeals. *See EC Term of Years Tr.*, 550 U.S. at 434. And Congress' incorporation of the provisions for petitions for review in 28 U.S.C. § 2112 demonstrates that Congress intended for challenges to the validity of exemption decisions to be resolved in a single court of appeals. *See* 28 U.S.C. § 2112(a); *TRAC*, 750 F.2d at 78 (exclusive jurisdiction in the courts of appeals eliminates duplicative and potentially conflicting review).

It makes no difference that Section 7(n) incorporates APA review standards. Statutes providing for exclusive review in the courts of appeals sometimes incorporate the standard-of-review provisions of the APA, but APA review *in the district court* is still displaced. *See* 5 U.S.C. § 7123 (review of decisions of Federal Labor Relations Authority); 15 U.S.C. § 3416 (National Gas Policy Act). The APA's general provisions are displaced by more specific statutory review provisions, even where those specific statutory review provisions incorporate APA standards of review. *See Ecee, Inc. v. F.E.R.C.*, 611 F.2d 554 (5th Cir. 1980) (specific statutory review provision that expressly incorporated 5 U.S.C. §§ 701-06 nonetheless displaced 5 U.S.C. § 704's provisions allowing direct judicial review, and displaced APA provisions on venue and record filing, in favor of more specific judicial review provisions); *City of Rochester*

19

*v. Bond*, 603 F.2d 927 (D.C. Cir. 1979) (special review provision incorporating APA judicial review standards in Communications Act provided for exclusive review in the court of appeals).

Plaintiff's attempt to use the APA as a vehicle to get its claims into district court—where there is a clear statutory mandate channeling its claims to the courts of appeals—therefore fails as a matter of law. Plaintiff must bring its claims to the proper court of appeals under Section 7(n) or not at all. *See also* 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute."); *Arch Coal*, 888 F.3d at 498 ("If a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review.") (citation omitted).

## II.    Plaintiff cannot establish any element of a Mandamus Act claim.

Plaintiff's Mandamus Act claim is also foreclosed. The Mandamus Act grants district courts "original jurisdiction of any action in the nature of mandamus," 28 U.S.C. § 1361, which they have "only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff," *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (quotation omitted). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Muthana*, 985 F.3d at 910 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).

Plaintiff's claim for relief under the Mandamus Act—that it is entitled to the records, "information," and meetings of the Committee—fails on every element and therefore should be dismissed for lack of subject matter jurisdiction. Courts often consider the first two issues—clear right to relief and clear duty to act—together. *See Lovitky v. Trump*, 949 F.3d 753, 759–60 (D.C. Cir. 2020).

20

To that end, Plaintiff has not plausibly alleged that the Committee had a duty to act or that Plaintiff is entitled to relief. The focus of Plaintiff's claim under the Mandamus Act appears to be its claim that documents were not made publicly available during the meeting. This is false. The Committee's records were posted on the Committee webpage at 8:59 am on March 31, 2026, half an hour before the meeting was scheduled to begin. Declaration of Megan Rybacki ¶ 3 & Ex. A; Committee Meeting Announcement, 91 Fed. Reg. 12672.[6] The meeting began a few minutes late at around 9:49 am (*see also* Am. Compl. ¶ 82, alleging the meeting started at 10:00 am) and concluded at 10:05 a.m.[7] After the meeting, a copy of the Committee's order was added to the same webpage. Rybacki Dec. ¶ 4 & Ex. A. In addition, those documents were filed with the pleadings submitted by other plaintiffs who have challenged the Committee's order. *See* D.D.C. No. 1:26-cv-1116, Dkt. No. 1.[8]

Plaintiff similarly fails to show an entitlement to "meetings" of the Committee. To the extent that this theory is based on its claim that there was an "unlawful closed meeting" of the Committee, that claim is not plausible because the only supporting factual allegation is that the meeting started thirty minutes after its scheduled time. *See* Am. Compl. ¶ 82. It is not plausible to

---

[6] The Court may consider material outside the pleadings, including the Declaration of Megan Rybacki, because review of the sufficiency of Mandamus Act claims is jurisdictional. *See Muthana*, 985 F.3d at 910.

[7] For further context, the meeting may still viewed at the livestream posted on YouTube, *available at* https://www.youtube.com/live/iC3xyp4GxRE. The livestream began on time. The meeting itself started a few minutes late and began about half an hour into the livestream.

[8] To the extent that Plaintiff's claim could be read to challenge the *completeness* of the Committee's record of proceedings, that claim, too, must be resolved by the court of appeals. *See* 16 U.S.C. § 1536(n) (providing that the Committee file the record in the court of appeals). It would be incongruous for this Court to adjudicate what is and is not a record of the Committee when the record is pending before the Fifth Circuit. *See* 5th Cir. No. 26-60240, Dkt. No. 20 (certified list of contents of record).

conclude that there was a secret meeting where there is an "obvious alternative explanation"—that the meeting simply started a few minutes late. *See Ashcroft v. Iqbal,* 556 U.S. 662, 682 (2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

Plaintiff likewise provides no factual allegations in support of its claim that it is generally entitled to "information" of the Committee. *See Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (right to mandamus must be clear and indisputable). Where a duty is not plain in the statutory text, but depends on statutory construction or interpretation, mandamus cannot be the remedy. *See id.*

Finally, Plaintiff has an adequate vehicle to raise claims about its access to documents, meetings, and other information of the Committee. It must raise those claims, alongside its challenge to the Committee's order, in the proper court of appeals, pursuant to the exclusive review provision of Section 7(n). *See* 16 U.S.C. § 1536(n); *see also Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) (mandamus request for documents was inappropriate where Freedom of Information Act was an adequate alternative).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims in their entirety for lack of subject matter jurisdiction based on the exclusive review provision in Section 7(n).

Dated: May 18, 2026            Respectfully submitted,

ADAM R.F. GUSTAFSON,
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE,
ROBERT N. STANDER,
Deputy Assistant Attorneys General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Acting Assistant Section Chief

 */s/ Sara M. Warren*
SARA M. WARREN, Trial Attorney

22

United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-5785
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

DAVIS A. BACKER, Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

*Attorneys for Defendants*

23