**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CENTER FOR BIOLOGICAL DIVERISTY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 26-940 (RC) |
| | : | | |
| v. | : | Re Document No.: | 24 |
| | : | | |
| DOUGLAS BURGUM, Secretary of the Interior, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS**

# I. INTRODUCTION

Plaintiff Center for Biological Diversity (the "Center") brings this action against Federal Defendants[1] challenging the Endangered Species Committee's issuance of an exemption for certain oil and gas activities in the Gulf of Mexico, also known as the Gulf of America. The Center's lawsuit closely tracks two related cases in front of this Court, and the Court recently granted a motion to dismiss in one of those cases. *See Nat. Res. Def. Council, Inc. v. Burgum* ("*NRDC*"), No. CV 26-1116 (RC), 2026 WL 3521211, at *12 (D.D.C. Nov. 16, 2026). In that case, the Court concluded that Congress has channeled claims challenging the Endangered Species' Committee's decisions to the courts of appeals, the Court lacked jurisdiction over such

[1] "Federal Defendants" refers collectively to Defendants Secretary of the Interior Douglas Burgum, Secretary of Agriculture Brooke Rollins, Acting Secretary of the Army Adam R. Telle (substituted for former Secretary of the Army Daniel P. Driscoll), Chair of the Council of Economic Advisers Christopher Phelan (substituted for Acting Chair of the Council of Economic Advisers Pierre Yared), Administrator of the Environmental Protection Agency Lee M. Zeldin, Administrator of the National Oceanic and Atmospheric Administration Neil Jacobs, and Secretary of Defense Pete Hegseth, all acting in their official capacity.

claims. *See id.* at *7. Here, the Federal Defendants likewise move to dismiss the Center's amended complaint, arguing that the Center should have brought its claims in the courts of appeals, and the Court grants the motion for similar reasons.[2]

## II. BACKGROUND

The Court has already recounted the factual and legal background for this case in greater detail in its recent decision in the related case. *See NRDC*, 2026 WL 3521211, at *2–5. Although the Center's amended complaint here differs somewhat, the factual allegations are quite similar. The Court therefore does not retread all the ground covered in the *NRDC* decision.

### A. Statutory Framework

Congress designed the Endangered Species Act ("ESA") "to conserve endangered species and threatened species." 16 U.S.C. § 1531(c)(1); *see also id.* § 1531 *et seq.* The act generally requires federal agencies to ensure "that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species," *Id.* § 1536(a)(2), and it generally makes it "unlawful" to harm endangered species, *id.* § 1538(a) (declaring it "unlawful" to "take" listed endangered species of fish, wildlife, or plants); *see id.* § 1532(19) (defining the term "take" to include harm).

But Congress created a pathway to exemptions from these requirements through the Endangered Species Committee (the "Committee"). *See id.* § 1536(e). Congress charged the Committee with "review[ing] any application submitted to it . . . and determin[ing] . . . whether or not to grant an exemption," which would exempt the agency or licensee from liability for the aforementioned ESA requirements. *Id.* § 1536(e)(2); *see also id.* § 1536(o)(1).

---

[2] Intervenor Defendant American Petroleum Institute joined Defendants' motion to dismiss. *See* Notice Joinder Defs.' Mot. Dismiss, ECF No. 32.

Before granting an exemption, the Committee, at least typically, must follow certain procedural steps under 16 U.S.C. § 1536(h). These requirements under subsection (h) include, but are not limited to, reviewing the evidence from a formal hearing to determine whether (1) "there are no reasonable and prudent alternatives to the agency action"; (2) "the benefits of such action clearly outweigh the benefits of alternative courses of action" and the "action is in the public interest"'; (3) "the action is of regional or national significance"; and (4) "neither the Federal agency concerned nor the exemption applicant made any irreversible or irretrievable commitment of resources." *Id.* § 1536(h)(1)(A). In addition, all the Committee's "meetings and records" must be left "open to the public." *Id.* § 1536(e)(5)(D).

Two provisions of this statutory scheme are especially relevant to this case. First, Congress gave the Secretary of Defense the power to force the Committee's hand in certain cases. "Notwithstanding any other provision of this chapter, the Committee *shall grant* an exemption for any agency action if the Secretary of Defense finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j) (emphasis added).[3] Second, Congress provided an avenue for judicial review of Committee decisions. "Any person . . . may obtain judicial review, under [the Administrative Procedure Act ("APA")], of any decision of the Endangered Species Committee under subsection (h) *in the United States Court of Appeals*." *Id.* § 1536(n) (emphasis added).

[3] Last year, the President authorized the Secretary of Defense to use a secondary title of Secretary of War. *See* Restoring the United States Department of War, Exec. Order No. 14,347, § 2(a), 90 Fed. Reg. 43,893, 43,893 (Sep. 5, 2025) ("The Secretary of Defense is authorized the use of this additional secondary title—the Secretary of War . . . ."). Some of the documents in this case use that title, but the Court uses Secretary of Defense in this opinion for clarity because it is the title Congress used in the relevant statute.

### B. Factual Background

The Center "is a national conservation organization that advocates for the protection of threatened and endangered species and their habitats." First Am. Compl. Decl. & Injunc. Relief ("Am. Compl.") ¶ 19, ECF No. 18. It alleges that oil and gas projects in the Gulf can be "lethal" to endangered species living there, "including the critically imperiled Rice's whale." *Id.* ¶ 21. Indeed, the federal government recognized as much in 2025 when it released a biological opinion finding "that these activities were likely to adversely affect ESA-listed species including Rice's and sperm whale, hawksbill, Kemp's ridley, leatherback, and loggerhead sea turtles, and Gulf Sturgeon." *Id.* ¶ 65.

Nonetheless, in March 2026, Secretary of Defense Pete Hegseth notified Secretary of the Interior Doug Burgum that he "found it necessary for reasons of national security to exempt from the [ESA's] requirements all Gulf of America oil and gas exploration and development activities associated with" certain federal programs. *Id.* ¶ 79 (alteration in original) (quoting declaration). In the Secretary of Defense's view, environmental litigation surrounding these federal programs could delay projects and thereby undermine national security. *See id.* ¶ 83. The Committee convened on March 31, 2026, and unanimously voted to grant the requested exemption. *Id.* ¶ 81. The Committee purported to grant the exemption "pursuant to subsection (h)." Endangered Species Committee Decision & Order, 91 Fed. Reg. 16,966, 16,966 (Apr. 3, 2026). Although the Committee "recognize[d] that the Endangered Species Act sets out a process for the Committee to consider an application for an exemption," it concluded "that these other provisions of Section 7, including the application requirements and standards, do not apply when the Secretary of War finds that an exemption is necessary for reasons of national security." *Id.* at 16,966.

Finally, the Committee explained that those seeking judicial review must do so "exclusively in the U.S. Courts of Appeals for the Fifth or Eleventh Circuits." *Id.* at 16,967.

The Center alleges that the Committee did not "ma[k]e available to the public prior to or during the meeting" any "documents regarding the meeting." Am. Compl. ¶ 81. Moreover, while the meeting was scheduled to begin at 9:30 a.m., "the public stream did not begin until 10:00 a.m.," from which the Center infers "that the Committee had an unlawful closed session prior to convening the public meeting." *Id.* ¶ 82. The Center alleges that, in granting the exemption, "the Committee followed none of the procedures and made none of the discretionary findings provided for under [subsection (h)]. The sole basis on which the exemption was granted was the 'exemption' invoked by Secretary Hegseth." *Id.* ¶ 85.

**C. Procedural Posture**

As noted above, this is one of three cases before the Court involving environmental groups challenging the Committee's exemption decision. *See NRDC*, 2026 WL 3521211, at *5; Am. Compl., *Healthy Gulf v. Burgum*, 26-cv-1118, ECF No. 19 (D.D.C. May 26, 2026). There are also parallel proceedings in the Fifth Circuit. *See* Consolidation Order, *Am. Energy v. Burgum*, 26-60240, ECF No. 9 (5th Cir. Apr. 21, 2026) (consolidating petitions from both industry and environmental groups).

Earlier in this case, before the Committee even made its exemption decision, the Center sought a temporary restraining order enjoining the Committee from convening to vote on the exemption. *See* Pl.'s Mot. TRO at 1, ECF No. 9. This Court denied that motion, concluding that the Court "likely lack[ed] subject matter jurisdiction over the claims [the Center] assert[ed]" and the Center had "not shown that the action it [sought] to challenge [was] likely a 'final agency action.'" Order Denying Pl.'s Mot. TRO at 1–2, ECF No. 17 (D.D.C. Mar. 27, 2026).

After the Committee granted the exemption, the Center amended its complaint. *See generally* Am. Compl. The amended complaint now raises four claims: (1) challenging under the APA the Committee's exemption decision, (2) challenging under the APA the allegedly unlawful withholding of information regarding the exemption process, (3) seeking a writ of mandamus compelling the Committee to release certain public records, and (4) challenging under the APA Secretary Hegseth's national-security finding. *See id.* ¶¶ 87–106. The Federal Defendants move to dismiss all counts under Fed. R. Civ. P. 12(b)(1), arguing that all these claims must be brought in the courts of appeals, if at all. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss at 2, ECF No. 24-1.

## III. LEGAL STANDARD

To survive the motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Center "must state a plausible claim" that this action falls within the Court's jurisdiction. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2017). "[A] district court considering a motion to dismiss for lack of subject matter jurisdiction accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). But the Court may resolve legal issues, such as issues of statutory interpretation, without assuming the truth of the complaint's legal conclusions. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Kōloa Rum Co. v. Noem*, 822 F. Supp. 3d 8, 34 (D.D.C. 2026).

## IV. ANALYSIS

The Center alleges four claims, three of which fall under the APA, 5 U.S.C. § 706, and one of which seeks mandamus under 28 U.S.C. § 1361. *See* Am. Compl. ¶¶ 87–106. The Court concludes that it lacks jurisdiction over all the Center's claims because Congress has required plaintiffs to bring APA claims like the Center's in the courts of appeals rather than in district

court, *see* 16 U.S.C. § 1536(n), and the mandamus claim is unavailable because the Center has an adequate alternative remedy in the form of the Freedom of Information Act.

**A.**

The Center's first claim (Count I) challenges the "adoption of an exemption" by the Committee. Am. Compl. ¶ 97. If the Committee, in adopting the challenged exemption, acted under Section 1536(h), then the Center must challenge that decision in the courts of appeals, rather than here in district court. *See* 16 U.S.C. § 1536(n) (allowing challenges to "any decision of the Endangered Species Committee *under subsection (h)* in the United States Court of Appeals" (emphasis added)); *see also Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1012–13 & n.5 (D.C. Cir. 2013) (per curiam) (holding that a similarly worded jurisdictional provision conferred exclusive jurisdiction in the *en banc* court and therefore ousted other tribunals of jurisdiction) (collecting cases). Whether this Court has jurisdiction of the Center's claim, then, turns on whether the Committee made its decision under subsection (h). The Court concludes that it did.

As the Court recently explained, the Committee acted under subsection (h) when it granted the exemption because "subsection (h) is the only legal authority under which the Committee actually grants exemptions." *NRDC*, 2026 WL 2026 WL 3521211, at *7; *see* 16 U.S.C. § 1536(e)(2) (authorizing the Committee to "determine . . . whether or not to grant an exemption" but only "in accordance with subsection (h)"). Therefore, the Center must raise its challenge in the courts of appeals and this Court lacks jurisdiction over its claim.

The Center counters that the Committee's actions reveal that it cannot have made its decision "*under* subsection (h)" within any sense of the word. *See* Pl.'s Mem. P. & A. Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 20, ECF No. 29 (quoting 16 U.S.C. § 1536(n)). The

Center interprets "under" to mean "subject to" or "governed by." *Id.* (quoting *Ardestani v. INS*, 502 U.S. 129, 135 (1991)). The Center therefore argues that because the Committee's exemption decision here did not comply with the procedural requirements of subsection (h), its decision was not "under subsection (h)" as required to divest this Court of jurisdiction. *Id.* at 20–23.

The Court disagrees. The Committee's authority to grant an exemption still falls under subsection (h)—or, as the Center puts it, is still subject to or governed by subsection (h)—whether or not the Committee complies with those requirements. *See NRDC*, 2026 WL 3521211, at *11 (addressing a similar argument). Congress, not the Committee, decides which statutory provisions govern the Committee's actions. *See id.* After all, courts routinely hold that a statute governs an agency's decision even if the agency did not comply with it. *See, e.g.*, *Nat. Res. Def. Council v. Thomas*, 805 F.2d 410, 414 (D.C. Cir. 1986) (reversing in part agency decision for "fail[ing] to follow the appropriate statutory procedure"). Indeed, that is exactly what the Center is asking the Court to do here on the merits. *See* Am. Compl. ¶¶ 88–97.

Unsatisfied, the Center insists that the Committee's alleged disregard for the applicable procedures means that review cannot lie in the courts of appeals because the lack "of prior, detailed administrative fact-finding and review" without those procedures "undermines a common central rationale for Congress's inclusion of special statutory review provisions." Pl.'s Opp'n at 27. But Congress created no such off-ramp for its remedial scheme. As this Court has previously concluded, "nothing in the text of Congress's review scheme hinges on the record the Committee created. And if an appellate court concludes that it needs a more robust record to review the Committee's decision, it may remand the decision for the Committee to conduct further proceedings." *NRDC*, 2026 WL 3521211, at *12 (citation omitted); *see, e.g.*, *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1536–37 (9th Cir. 1993) (holding

that the Endangered Species Committee failed to provide the full record and "remand[ing] the matter to the Committee for an evidentiary hearing"); *see also, e.g.*, *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 416 (D.C. Cir. 2011) ("Where we cannot evaluate the challenged agency action on the basis of the record before us, the proper course is to remand to the agency for additional investigation or explanation." (cleaned up)).

**B.**

The Court's conclusion that it lacks jurisdiction over the Center's direct challenge to the Committee's exemption decision does not necessarily resolve Defendants' motion to dismiss. Defendants move to dismiss all the Center's claims, which also includes (1) an APA claim that the Committee has "unreasonably delayed and unlawfully withheld" certain records of its proceedings, (2) a mandamus claim seeking to "compel Defendants to provide the Center with access" to the withheld information, and (3) another APA claim challenging Secretary Hegseth's national-security determination as arbitrary and capricious. Am. Compl. ¶¶ 98–106. As explained below, however, the Court lacks jurisdiction over these remaining claims as well.

**1.**

The Court first addresses the two remaining APA claims, Counts II and IV, and concludes that it lacks jurisdiction over both claims because both are subsumed within the Center's challenge to the Committee's exemption decision and therefore fall under subsection (n). Subsection (n) incorporates the APA by reference. *See* 16 U.S.C. § 1536(n). And the APA generally limits plaintiffs to challenging only final agency actions. *See Bennett v. Spear*, 520 U.S. 154, 177 (1997). To be final, the agency action must satisfy two conditions. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by

which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett*, 520 U.S. at 177–78). Here, neither count challenges a final agency action.[4]

Starting with Count II, the Court finds that the Committee's decisions not to release certain records or hold a public hearing before voting on the exemption were not final agency actions. Admittedly, in some sense the Committee made a final decision to not release the records, and the Center's ability to access those records flowed from that decision. But such "subsidiary decisions merge into the final agency action, which is then subject to review." *Mullin v. Doe*, 609 U.S. 324, 344 (2026) (holding certain preliminary decisions fell under a no-review provision that covered the ultimate decision). Because this Court cannot review the final agency action, it cannot review the subsidiary determinations either. *See id.* ("If the final agency action is unreviewable, then so too are subsidiary determinations.").

The Center does not dispute this. It argues only that it may challenge these information requirements as part of its challenge to the exemption decision. *See* Pl.'s Opp'n at 30–32. Because the Court has already concluded that it lacks jurisdiction over challenges to the exemption decision, the Center's arguments for the related procedural challenge under the APA fare no better.

---

[4] Ordinarily, whether the Center challenges a final agency action would not raise a jurisdictional issue. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 n.4 (D.C. Cir. 2006) (holding that district court erred by dismissing claim that challenged a nonfinal agency action "for lack of subject matter jurisdiction"). In this case, however, finality and jurisdiction intermix because it is the final-agency-action requirement that pushes claims which might otherwise escape subsection (n) to fall within its reach, and the applicability of subsection (n) is jurisdictional. *See NRDC*, 2026 WL 3521211, at *6 (concluding that whether a claim falls within subsection (n)'s remedial scheme "bears jurisdictional weight").

Count IV, the Center's challenge to the Secretary of Defense's national-security determination, is more complicated. Although "an agency's subsidiary decisions merge into the final agency action," *Mullin*, 609 U.S. at 344, the Secretary of Defense is not generally part of the Committee and therefore is not part of the same agency, *see* 16 U.S.C. § 1536(e)(3).

But even though the Secretary of Defense acts as part of a different agency from the Committee, the Court still concludes that Committee's exemption decision subsumes the national-security finding. The Court draws this conclusion from the Supreme Court's decision in *Dalton v. Specter*, 511 U.S. 462 (1994).[5] There, the respondents challenged a decision that arose from collaboration between multiple different agencies: the closure of a naval base. *See id.* at 464. "The decision to close [a base] was the end result of an elaborate selection process," involving, among other things, an independent commission recommending which bases to close and the President approving or disapproving the report. *Id.* at 464–65. After the process unfolded and the President decided to close a naval base in Philadelphia, the respondents sued to prevent the closure, challenging, among other things, alleged failures by the Secretary of Defense and the independent commission to follow certain "procedural mandates." *See id.* at 466, 469.

The Supreme Court held that these decisions by the Secretary of Defense and the independent commission were not final agency actions even though they marked the final actions of those agencies. *See id.* at 469–70. The Court explained that the Secretary's and commission's actions "carr[ied] no direct consequences for base closings." *Id.* at 469 (cleaned up). Only the

[5] The Supreme Court is currently considering a similar issue in *Dep't of the Air Force v. Guahan*, 146 S. Ct. 1794 (2026) (granting writ of certiorari). But no party has asked the Court to stay consideration of this case pending the Supreme Court's decision there, and the Court believes it is unlikely that *Guahan* will be dispositive in this case.

President's decision would "directly affect" the respondents. *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

Most important for this case, the Court rejected the respondents' argument that the independent commission's actions should be considered final because the President had "little authority regarding the closure of bases" after the commission gave its recommendation. *Id.* at 470. The Supreme Court reasoned first that the respondents "underestimated the President's authority," but "[s]econd, and more fundamentally," that the argument "ignore[d] the core question for determining finality." *Id.* at 470 (cleaned up). The "crucial" consideration was that "the President, not the Commission, t[ook] the final action that affect[ed] the military installations." *Id.* (cleaned up). The Court precluded review of the other agencies' actions even though it went on to hold that the President's decision was also unreviewable, effectively insulating the entire decisionmaking process from judicial review. *See id.* at 476–77.

Applying that reasoning here, the Secretary of Defense's national-security finding is not a final agency action for purposes of APA review. Although the Secretary of Defense's decision requires the Committee to ultimately grant the exemption, up until the Committee actually does so, the Secretary of Defense's decision carries "no direct consequences" for the Center. *Id.* at 469 (quoting *Franklin*, 505 U.S. at 798). It is the Committee who grants the exemption. *See* 16 U.S.C. § 1536(j) ("[T]he Committee shall grant an exemption . . . ."). "[T]he fact that the [Committee], not the [Secretary], takes the final action that affects" the Center is dispositive for purposes of finality. *Dalton*, 511 U.S. at 470 (cleaned up).[6]

---

[6] Challenging the Secretary of Defense's national-security finding may raise another jurisdictional issue. The D.C. Circuit recently concluded that district courts lack jurisdiction over claims in a similar situation involving a plaintiff's simultaneous challenge to two agencies' decisions: the decision by one agency to place him on the Terrorist Watchlist, and the decision by another agency to place him on the No Fly List. *See Khalid v. Blanche*, 172 F.4th 876, 879

**2.**

Finally, the Court also lacks jurisdiction over the Center's mandamus claim (Count III). To bring a mandamus claim, a plaintiff must overcome three jurisdictional hurdles: they must show that "(1) the plaintiff has a clear right to relief; (2) the defendant as a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)). Because this Court lacks jurisdiction if the Center fails even one of these requirements, the Court addresses only the final requirement and concludes that it lacks jurisdiction because the Center has other adequate remedies. *See id.*

The Center focuses on whether it has an adequate remedy through a challenge to the exemption decision in the courts of appeals through a challenge to the Committee's ultimate

---

(D.C. Cir. 2026). The two designations were highly interrelated, albeit not mutually exclusive. An individual could be on the Terrorist Watchlist without being on the No Fly List, but they could not "be designated for the No Fly List unless [they were] already on the Terrorist Watchlist." *Id.* at 880. Thus, a decision vacating the first agency's decisions to put the plaintiff on the Terrorist Watchlist would necessarily set aside the second agency's decision to place him on the No Fly List. *See id.* at 886. Yet Congress created a review scheme whereby only district courts could review designations on the Terrorist Watchlist while only courts of appeals could review designations on the No Fly List. *See id.* at 882. Because of both the interplay between the two designations and the two different judicial-review schemes, the D.C. Circuit held that the district court lacked jurisdiction to consider a challenge to Terrorist Watchlist designation until the D.C. Circuit first addressed the separate challenge to the No Fly List designation, lest the district court "usurp" the circuit court's "jurisdiction." *Id.* at 886.

That same reasoning may apply here too. A decision from this Court setting aside the Secretary of Defense's national-security determination would likely also vacate the Committee's exemption decision, which only the courts of appeals have jurisdiction to do. It may be the case, then, that under *Khalid* a district court must await the meritorious challenge to the Committee's decision before considering a challenge to the Secretary of Defense's national-security determination, assuming it were a final agency action. The Court need not decide that question here, however, because the parties do not raise it, and there is another jurisdictional ground which resolves the claim.

decision. *See* Pl.'s Opp'n at 34–37.[7] The Center insists that such a remedy would be inadequate because, among other things, relief should not "be contingent on pursuit of a substantive challenge to a Committee 'order' granting an exemption." *Id.* at 36. But the Federal Defendants also argue—albeit briefly and obliquely—that the Freedom of Information Act ("FOIA") provides an adequate alternative remedy. *See* Def.'s Mot. at 22. The Center offers no response to this argument.

In broad strokes, FOIA requires federal agencies to provide requesting individuals with government records. *See* 5 U.S.C. § 522. That is precisely what the Center is demanding that the Federal Defendants do through its mandamus claim. *See* Am. Compl. ¶ 104; Pl.'s Opp'n at 37 (arguing "that the Committee is in ongoing violation of its express mandatory duty to make 'all' of its records 'open to the public'"). "[A] near unanimous chorus" of "courts in this circuit have rejected plaintiffs' attempts to use a writ of mandamus to compel agencies to turn over government records because FOIA gives them an adequate remedy." *Chaverra v. U.S. Immigr. & Customs Enf't*, No. CV 18-289 (JEB), 2018 WL 4762259, at *6 (D.D.C. Oct. 2, 2018) (collecting cases); *see also Am. First Legal Found. v. U.S. Fed. Trade Comm'n*, No. 23-CV-02765 (DLF), 2024 WL 3967243, at *5 (D.D.C. Aug. 25, 2024) (similar).

It does not matter whether FOIA "is less efficient or less effective than mandamus relief would be." *Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 267 (D.D.C. 2012) (dismissing mandamus claim because FOIA provided adequate alternative remedy), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020). It still provides an adequate remedy and therefore "preclude[s]" mandamus

[7] As described in its brief, the Center focuses exclusively on the lack of access to records, not the failure to participate in the meeting. *See* Pl.'s Opp'n at 32 ("The Center's claim alleges that the Committee is in violation of this mandatory duty because 'the Committee has yet to make all of its records available to the public.'" (quoting Am. Compl. ¶ 103)).

relief. *Id.* Despite the Federal Defendants referencing FOIA as an adequate alternative in their opening brief, the Center provides no explanation as to why FOIA is inadequate, and it is not obvious that it would be. *Compare Phang v. Blanche*, 836 F. Supp. 3d 90, 108 (D.D.C. 2026) (granting mandamus and finding that FOIA was not an adequate remedy because the requested records would very likely fall within an exemption to FOIA), *appeal filed*, No. 26-5299 (D.C. Cir.), *with Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 152 (D.D.C. 2013) ("The fact that Plaintiff's APA claim has failed in these circumstances does not prevent the APA from being an 'adequate means to attain relief' for mandamus purposes."). The Center has therefore failed to carry its burden of establishing that no adequate alternative exists and therefore that this Court has jurisdiction over its mandamus claim.[8]

## V. CONCLUSION

For the foregoing reasons, the Court grants the Federal Defendants' motion to dismiss in its entirety. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 20, 2026

RUDOLPH CONTRERAS
United States District Judge

---

[8] None of the cases that the Center cites in support of its argument that other courts in this Circuit have granted mandamus relief "[i]n functionally identical circumstances" addressed the availability of FOIA as an adequate alternative. Pl.'s Opp'n at 34; *see Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 122 (D.D.C. 2020) (considering only whether an adequate remedy existed under the APA); *Judicial Watch, Inc. v. U.S. Dep't of Com.*, 736 F. Supp. 2d 24, 31 (D.D.C. 2010) (permitting mandamus to continue without addressing adequate alternative remedies). The Court need not evaluate whether the outcomes in these cases were correct because, here, it suffices to conclude that the Center has not met is burden of establishing that FOIA is not an adequate alternative.